L. E. SIMPSON, DOING BUSINESS AS RAVEN SALES COMPANY, APPELLANT, V. JOHN J. MEIER COMPANY, A CORPORATION, ET AL., APPELLEES.

63 N. W. 2d 158

Filed March 5, 1954. No. 33431.

*LaRue Bowker* and *Lawrence R. Brodkey*, for appellant.

*Pilcher & Haney* and *Joseph H. McGroarty*, for appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

CHAPPELL, J.

Plaintiff, L. E. Simpson, brought this action to recover

for damages to his truck which, while being operated in a southerly direction, collided with the rear of one owned and operated by defendant John J. Meier Company, which was concededly disabled upon its right side of the highway, headed in the same direction. Defendant Interstate Bakeries Corporation owned and operated a truck which at time of the accident was headed in a northerly direction on its right side of the highway, with the front end of its trailer a little ahead of or about even with the rear of the John J. Meier Company's truck. The parties will be designated herein as plaintiff and defendants or Meier and Interstate. Decision of the issues is entirely controlled by the statutes and decisions of Iowa.

Plaintiff's petition alleged inter alia that about 10:15 p. m., March 28, 1951, his truck, equipped with good and sufficient brakes and lights, while being operated by his employee without negligence upon paved U. S. Highway No. 6 in a southerly direction about 6 miles northeast of Council Bluffs, Iowa, collided with the rear of defendant Meier's disabled truck. In that connection, he alleged that about the same time defendant Interstate's truck was negligently stopped or parked, headed in a northerly direction on the east side of the pavement next to Meier's disabled truck, without dimming its lights, all in violation of the Code of Iowa, 1950, sections 321.354, 321.395, and 321.416. He alleged that the disabled truck belonging to defendant Meier was negligently stopped or parked headed in a southerly direction on the west side of the pavement, without lights or the setting out of fuses or flares, all in violation of the Code of Iowa, 1950, sections 321.354 and 321.448. He also alleged that the sole proximate cause of the accident was the joint, several, and concurrent negligence of defendants.

Insofar as important here, the separate answers of defendants denied generally and alleged that the accident was proximately caused by the negligence of plaintiff's driver, which, under the laws of Iowa, barred plaintiff's

recovery. During the trial it was conceded that the trucks involved were respectively driven by employees of the owners thereof in the course of their employment, and that the court should take judicial notice of applicable statutes and decisions of the State of Iowa which were controlling in the case.

At conclusion of plaintiff's evidence the trial court sustained defendants' separate motions to direct or dismiss, and dismissed the action primarily upon the ground that the evidence was insufficient to sustain a verdict for plaintiff, and that in any event it was: "a clear case of plaintiff's driver being negligent," which barred plaintiff's recovery. Plaintiff's motion for new trial was overruled and he appealed, assigning substantially that: (1) The trial court erred in the exclusion of certain evidence; and (2) in sustaining defendants' motions and dismissing the action. We conclude that the assignments should not be sustained.

With regard to the first assignment, it was only incidentally argued that the trial court erroneously excluded certain evidence, and the record discloses either that no required offer of proof was made after objection thereto had been sustained, or that the objection was properly sustained, or that the offered evidence was subsequently admitted, or that if any evident answers had been admitted they could not have changed the result. In other words, the negligence of plaintiff's driver would have barred plaintiff's right of recovery in any event.

As we view it, our inquiry here is narrowed to one proposition, to wit: Was the evidence adduced by plaintiff sufficient to require submission of the question of contributory negligence of plaintiff's driver to the jury, or was it a matter of law for the court? We conclude that it was a matter of law.

In that connection, the rule in Iowa is that the burden is upon the plaintiff not only to prove that alleged negligence of defendants was the proximate cause of the

accident, but also that plaintiff's driver was free from negligence, which proximately contributed thereto. In determining the correctness of the trial court's ruling we must of course consider as true all of the facts established by plaintiff's evidence in the light most favorable to him, and give him the benefit of all reasonable inferences that may be drawn therefrom. Shannahan v. Borden Produce Co., 220 Iowa 702, 263 N. W. 39. Further, when this is done and reasonable minds might reach different conclusions therefrom upon the issue of plaintiff's freedom from contributory negligence, then the issue is for the jury, otherwise it is for the court as a matter of law. Knaus Truck Lines v. Commercial Freight Lines, 238 Iowa 1356, 29 N. W. 2d 204. Concededly, such rules are applicable here.

In Iowa it is also the rule that: "* * * if the injured party contributed in any way, or in any degree, directly to the injury, there can be no recovery." Banning v. Chicago, R. I. & P. Ry. Co., 89 Iowa 74, 56 N. W. 277. See, also, Towberman v. Des Moines City Ry. Co., 202 Iowa 1299, 211 N. W. 854; Hoegh v. See, 215 Iowa 733, 246 N. W. 787.

Such contributory negligence need not be the sole or proximate cause of the injury, but, as stated in Jakeway v. Allen, 227 Iowa 1182, 290 N. W. 507: "It is true that such negligence must be causal." As stated in Rietveld v. Wabash R. R. Co., 129 Iowa 249, 105 N. W. 515, and quoted with approval in Towberman v. Des Moines City Ry. Co., *supra*: "Of course, the plaintiff's negligence must be such as contributes proximately to his injury; but, if it does so in whole or in part, in any manner or to any degree, there can be no recovery on his behalf."

In the light of such rules and others hereinafter discussed, we have examined the record. Insofar as important here, the evidence discloses to wit: Approaching and at the point of accident, U. S. Highway No. 6 was a dry, paved highway about 18 feet wide. Before the accident, which occurred on March 28, 1951, about

10:15 p. m., plaintiff's driver had approached from the northeast, traveling in a southwesterly direction along and around a 600 or 700 foot long sweeping curve slightly inclined, perhaps 3 percent. It was a clear but rather dark night. Plaintiff's driver, with many years experience as such, had traveled over the highway at that point more than 300 times previously. Plaintiff's truck, weighing 19,000 pounds, was not loaded with freight. It was equipped with lawful air brakes and lamps which would ordinarily light up the pavement and part of the shoulders thereof some 250 to 300 feet ahead. The Code of Iowa, 1950, section 321.431, required that his brakes should be adequate when traveling on dry concrete pavement at 20 miles an hour where the grade did not exceed 1 percent, to stop within 45 feet. Plaintiff's driver also testified that at the speed he was traveling when he first saw the Meier truck he could have stopped within 30 or 40, not to exceed 40 or 50, feet after his foot was applied to the brake, which required no pressure.

At the end of the long sweeping curve the highway turns south as it runs adjacent to a filling station on the west side which had a gravel or white rock driveway 150 to 200 feet long and 32 to 34 feet wide continuously from the pavement to the gas pumps.

Plaintiff's driver entered such long sweeping curve at about 40 miles an hour. When he had passed along about one-third thereof he saw the lights of the Interstate truck facing north in the vicinity of the south edge of the filling station driveway. By analogy, it was then about 400 to 450 feet from him. Plaintiff's driver then blinked his lights several times and, receiving no response, took his foot off the gas and kept it near the brake pedal to be prepared to use it if needed and to stop if there was something wrong. In that connection he said: "I knew there was something wrong or somebody would answer me when I signaled." His truck was permitted to coast and slow down for some distance.

He kept his foot near the brake pedal in case he was required to stop. When almost through the curve and traveling at about 25 miles an hour, he kept his foot on the brake pedal from then on, and started to ride his brakes because he anticipated that something was wrong and he might be required to stop.

He testified that bright lights of the Interstate truck coming from the side blinded his vision for some distance, but nevertheless he went on, and as he came out of the curve he saw the disabled Meier truck in his lane with no lights or flares, about 70 to 75 feet ahead of him, and another truck with no lights or flares some 12 or 15 feet north thereof facing northeast on the filling station driveway. At that time the Interstate truck was in the left lane opposite the Meier truck with the front end of its trailer about even with or a little ahead of the rear of the Meier truck. Whether the Interstate truck was then stopped a moment or so is speculative. Rather, the evidence more reasonably establishes that at the time of the accident it was moving slowly past the Meier truck and stopped for a moment or so after the accident. In such situation, it is only reasonable to conclude that plaintiff had two alternatives by which he could have avoided collision with the exercise of ordinary care, that is, with his foot already on the brake pedal he could have stopped as was his duty, or he could have turned right off into the driveway, since there was concededly plenty of room for him to have done so. However, he did neither. Rather, still traveling at 12 or 15 miles an hour, he turned right and attempted to go around or pass the Meier truck over the shoulder on the wrong side, between it and the truck parked in the driveway. Such attempt failed, and the left front and corner of his truck collided with the right rear and corner of the Meier truck when his right front wheel was possibly two feet off the pavement. Coincidentally, he also struck a log chain which had been attached between the rear of the Meier truck and the truck parked north thereof on the

driveway. In that connection he said: "I seen a log chain just about the time I hit it." In other words, there was no competent evidence that such chain caused him to collide with the truck. Plaintiff's truck collided with such force that it nosed under and moved the Meier truck down the highway 2 or 3 feet, swerved the front end of it to the left on the pavement, and damaged the left front of plaintiff's truck to such an extent that it required an expenditure of at least $643.08 to repair it.

Further, one of plaintiff's witnesses, a part-time employee at the filling station and otherwise employed by plaintiff, testified that about 10 p. m. the Meier driver came to the filling station, then closed, seeking assistance for removal of his disabled truck from the pavement. He and another party, who did not testify, responded. They then placed the truck on the driveway some 12 or 15 feet north of the Meier truck and attached a log chain from it to the Meier truck. The witness testified that there was then one kerosene flare ahead of the Meier truck on the left shoulder and one on the left side of the Meier truck in the center of the pavement, but there was none at the rear. When they were ready, but before they attempted to move the Meier truck, the flare in the center of the pavement was picked up by the witness so that it would not be run over, and he was holding it up at the front of such truck in the center of the pavement at the time of the accident, which occurred about 10:15 p. m. He estimated that the distance from the end of the long sweeping curve to the rear of the Meier truck was about 100 feet and that the long sweeping curve, looking in a northeasterly direction, commenced at about the north edge of the station driveway, which gave a driver vision straight ahead toward the south for 100 to 150 feet after he came out of the curve. Two photographs received in evidence illustrate the topography at point of the accident and some distance therefrom in both directions.

The Code of Iowa, 1950, § 321.285, reads in part: "Any

person driving a motor vehicle on a highway shall drive the same at a careful and prudent speed not greater than nor less than is reasonable and proper, having due regard to the traffic, surface and width of the highway and of any other conditions then existing, and no person shall drive any vehicle upon a highway at a speed greater than will permit him to bring it to a stop within the assured clear distance ahead, such driver having the right to assume, however, that all persons using said highway will observe the law."

In Central States Electric Co. v. McVay, 232 Iowa 469, 5 N. W. 2d 817, the court construed such section as meaning that: "* * * where a motorist, while in the exercise of ordinary care, unexpectedly comes upon a vehicle of which he is not aware and which is not lighted as required by law, and thereafter exercises such care in an attempt to avoid striking the vehicle, he is not to be held guilty of negligence as a matter of law in colliding with the obstruction." Plaintiff relies upon such rule, but as heretofore observed, under the facts in this case it can give him no relief since plaintiff's driver did not unexpectedly come upon the Meier truck and did not exercise ordinary care to avoid colliding with it after he timely observed it. He simply took a chance, or trusted to luck, and lost.

Also, as stated in Knaus Truck Lines v. Commercial Freight Lines, *supra:* "Compliance with statutes is not all the law requires of a motorist. Statutes prescribe only the minimum of prudent conduct. All motorists are also required to exercise the care of the ordinarily prudent person under the circumstances. Langner v. Caviness, 238 Iowa 774, 779, 28 N. W. 2d 421, 424."

If the vision of plaintiff's driver was obscured by the bright lights of the Interstate truck while he was still some distance from the Meier truck, it was his duty to slow down and stop until he could see that it was safe for him to proceed. Shannahan v. Borden Produce Co., *supra.* Further, if the headlights of the Interstate truck

obscured the vision of plaintiff's driver, such fact would not constitute a legal excuse for failure to drive at such speed as to be able to stop within the assured clear distance ahead. Lindquist v. Thierman, 216 Iowa 170, 248 N. W. 504, 87 A. L. R. 893. See, also, Annotation, 87 A. L. R. 900.

As stated in Kadlec v. Johnson Construction Co., 217 Iowa 299, 252 N. W. 103: "In Harvey v. Knowles Storage & Moving Co., 215 Iowa 35, loc. cit. 42, 244 N. W. 660, in reference to the assured clear distance ahead statute we said: 'A violation of, or noncompliance with, this statute, *without proof of legal excuse* for noncompliance, constitutes negligence.' (Italics ours.)

"A thorough consideration of this question is contained in an opinion written by Chief Justice Kindig, in Lindquist v. Thierman, 216 Iowa 170, 248 N. W. 504. In that case, and also in the Wosoba v. Kenyon case, 215 Iowa 226, 243 N. W. 569, the plaintiff was blinded by lights of the on-coming car. Under such circumstances, it was held that, when the driver of a car is blinded by the lights of an on-coming car, it is his duty to stop, and a failure so to do amounts to a violation of the 'assured clear distance ahead' statute, and constitutes contributory negligence, as a matter of law."

Also, as appropriately said in Richards v. Begenstos, 237 Iowa 398, 21 N. W. 2d 23, citing numerous cases: "He had a safe course to pursue which would have fully protected him, but he chose not to take it and voluntarily placed himself in a place of obvious danger, which his experience and knowledge of existing conditions should have told him would very probably and almost certainly result in injury to all concerned."

Further, contrary to plaintiff's contention herein, there was no emergency unless it was one created by his own driver's negligence. 1 Blashfield, Cyclopedia of Automobile Law and Practice, c. 15, § 669, p. 547.

As stated in Parrack v. McGaffey, 217 Iowa 368, 251 N. W. 871, citing numerous cases: "It is the settled rule

of law, where one voluntarily places himself in a position of danger which can be seen and appreciated, he is guilty of contributory negligence, as a matter of law."

As stated in 1 Blashfield, Cyclopedia of Automobile Law and Practice, § 785, p. 723, citing Shannahan .v. Borden Produce Co., *supra,* and authorities from other jurisdictions: "Where the vision of a motorist is temporarily obscured or impaired, or he is blinded by lights, and he has sufficient time or opportunity, before the happening of the accident, to slow down or stop, it is his duty to do so, and to go ahead slowly or to remain stopped until it is apparent that he can proceed with safety." See, also, 2 Blashfield, Cyclopedia of Automobile Law and Practice, § 1221, p. 88, citing Lukin v. Marvel, 219 Iowa 773, 259 N. W. 782, and authorities from other jurisdictions.

As we view it, the authorities relied upon by plaintiff are entirely distinguishable upon the facts and rules applicable thereto. Further discussion thereof would serve no purpose except to unduly prolong this opinion. For reasons heretofore stated, the judgment of the trial court should be and hereby is affirmed.

AFFIRMED.