JOSEPH F. CHMELKA, JR., APPELLANT AND CROSS-APPELLEE, V.
CONTINENTAL WESTERN INSURANCE COMPANY, A CORPORATION,
APPELLEE AND CROSS-APPELLANT.
352 N.W.2d 613

Filed August 3, 1984.    No. 83-444.

Gary J. Nedved of Marti, Dalton, Bruckner, O'Gara &
Keating, P.C., for appellant.

Alan L. Plessman, for appellee.

BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and
GRANT, JJ.

WHITE, J.

This is a personal injury action in which the plaintiff, Joseph F. Chmelka, Jr., seeks to recover uninsured motorist coverage benefits provided by an insurance policy issued by the defendant, Continental Western Insurance Company. No previous determination had been made as to the alleged negligence of the uninsured driver, and he is not a party to this action. The case proceeded to trial on the issues of the negligence of the uninsured motorist and the contributory negligence and assumption of risk of the plaintiff. The jury returned a verdict for the plaintiff in the amount of $140,000. The trial court sustained the defendant's motion for a new trial because of a faulty jury instruction. The plaintiff appealed, contending that the trial court erred in sustaining the motion for a new trial. We agree, and therefore reverse with instructions to reinstate the jury's verdict.

At approximately 9 p.m. on August 5, 1979, the plaintiff and his friend decided to attend an open wedding dance at the Starlite Ballroom in Saunders County, Nebraska. About 11:30 p.m. the plaintiff and several other friends went outside to one of their cars to drink beer. Just as the plaintiff was ready to leave to go home, John F. Vasa and his girl friend, Maggie Sullivan, walked out of the ballroom. Chmelka engaged in a short conversation with Vasa and Sullivan, and then the couple got in Vasa's car. The car was parked in the most northern row of cars in the ballroom parking lot. The parking lot is located between the ballroom and Highway 92 and is elevated from the highway. After Vasa and Sullivan had gotten in his car, Vasa discovered that the car was stuck in first gear and could not be shifted into reverse. Consequently, he got out of the car, examined the ditch, and determined that he could drive down through the ditch and onto the highway. He instructed Sullivan to get out of the car, and he then proceeded to drive down into the ditch; however, the car's front end got stuck on the bottom of the ditch. At that point the Vasa vehicle was pointed downhill at a slight angle toward the northwest.

Chmelka's four friends went down into the ditch to help free Vasa's car. The plaintiff and Sullivan remained in the parking

lot. They were standing southeast of Vasa's car, 10 to 15 feet to the right and 20 feet behind the car. As the four boys were pushing and rocking the car, Vasa would accelerate rapidly, causing the rear wheels to "spin" and "smoke." After several unsuccessful attempts the car finally broke free. Robert T. Shanahon, Jr., one of the boys who helped push the car, testified as follows:

Q. [Nedved] And could you describe for the ladies and gentlemen of the jury what happened as the car came free? A. Well, I was still lifting up on the front of the car when the car came free, and when it come free, it just took off. We were sitting there, lifting on the front end of the car, and when it took off, I fell down on the ground and he just kept it floored when he took off and when he took off, he just took off flying because he sprayed dirt and everything all over me and whoever else was behind the car got dusty too. He just took off and went fishtailing down the highway. Q. Did it sound like he still had the car floored? A. Yes, he still had the car floored, wide open. Q. When you say that he was wrapping it as tight as he could, what do you mean by that? A. It means that the motor won't run no faster when it gets wrapped up as tight as it will go, it won't run no faster. It's wound up, it can't go no faster.

Shanahon further testified that there were numerous rocks and chunks of cement in the ditch in the vicinity where Vasa's car was stuck.

Immediately after freeing the car, the boys went back to the parking lot, where they found the plaintiff lying on the ground, his face covered with blood. The plaintiff suffered severe, permanent injuries, including the loss of his right eye. No one actually witnessed how the plaintiff was injured, and he does not remember.

In his amended petition the plaintiff alleged that his injuries were sustained by the negligent conduct of Vasa while trying to free his car. The amended petition further alleged that the coverage for each of the three vehicles insured under the defendant's policy could be aggregated, resulting in a total of $45,000 in uninsured motorist coverage. The plaintiff prayed for damages up to the limits of liability set out in the defendant's policy.

In its answer the defendant admitted that it issued to the plaintiff's parents a family combination automobile policy and that the policy provided for uninsured motorist coverage for the three vehicles described therein. The defendant also admitted that the plaintiff sustained personal injuries at the Starlite Ballroom parking lot, but generally denied the remaining allegations of the plaintiff's petition. The defendant affirmatively alleged that the plaintiff was contributorily negligent and assumed the risk of injury.

The jury returned a general verdict in favor of the plaintiff for $140,000. On March 16, 1983, the trial court sustained the defendant's motion for a new trial based on an allegedly faulty jury instruction, and this appeal followed.

The standard of review of an order granting a new trial is whether the trial court abused its discretion. This court will not disturb an order granting a new trial unless it clearly appears that there are no tenable grounds existing therefor. *Juniata Feedyards v. Nuss*, 216 Neb. 29, 342 N.W.2d 1 (1983).

The jury instruction in question was structured after NJI 2.02. Included in this instruction was the following allegation of negligence: "Plaintiff claims in said petition that the said John Vasa was negligent in accelerating his vehicle thereby causing the tires to spin in a rapid fashion."

During the instruction conference, the defendant objected to this instruction on the grounds that "it is an improper allegation or act of negligence, and there is insufficient evidence to warrant giving it." At the prehearing conference the defendant, in an apparent change of position, contended that the instruction was erroneous because "further information was necessary, such as, faster than was reasonable under the conditions then and there existing."

The plaintiff's theory of the case, from the outset, was that a rock, bottle, or other object was thrown by the spinning rear wheels of Vasa's car while Vasa was trying to extricate his car from the ditch and that the spinning rear wheels were the proximate cause of plaintiff's injuries. The defendant contends that Vasa was under no duty to refrain from spinning his wheels in a rapid fashion and therefore the trial court's instruction does not constitute an allegation of negligence. We are not convinced by such an interpretation.

The driver of a motor vehicle is under a continuing duty to exercise reasonable care for the safety of others. *Bear v. Auguy*, 164 Neb. 756, 83 N.W.2d 559 (1957); *Simpson v. John J. Meier Co.*, 158 Neb. 264, 63 N.W.2d 158 (1954). This duty, as the defendant concedes, encompasses the use of reasonable care in freeing one's vehicle when it has become stuck. The concept of reasonable care and the broader concept of negligence cannot be measured in a vacuum. Whether or not Vasa exercised reasonable care in freeing his car depends upon the facts and circumstances of the case, as reflected by the evidence presented. See *McClelland v. Interstate Transit Lines*, 142 Neb. 439, 6 N.W.2d 384 (1942).

In his amended petition the plaintiff alleged that Vasa was negligent "[i]n accelerating his vehicle and causing his tires to spin on the parking lot." The plaintiff presented evidence that Vasa was accelerating his car in such a fashion as to cause his rear wheels to "smoke." This high acceleration continued even after Vasa's car was unstuck and while he was driving onto the highway. There was evidence that large rocks or pieces of cement were located in the area where the car was stuck.

The defendant contends that "[p]erhaps, the operator [of a motor vehicle] has a duty to exercise reasonable care in freeing his vehicle, but the duty can't be properly stated any more specifically than that; certainly not as specific as in the court's instruction." Brief for Appellee at 19. When appropriate, it is the better practice for the trial court to instruct the jury as to specific acts of negligence rather than general allegations of negligence. *Graham v. Simplex Motor Rebuilders, Inc.*, 189 Neb. 507, 203 N.W.2d 494 (1973). Proper practice is to instruct as to specific acts of negligence charged and supported by the evidence. *Ripp v. Riesland*, 176 Neb. 233, 125 N.W.2d 699 (1964).

Had the plaintiff merely stated in his petition that Vasa was negligent in freeing his vehicle from the ditch, such a petition would surely be subject to a motion to make more definite and certain. Chmelka pled and presented evidence that Vasa was spinning his tires rapidly. Whether or not this conduct constituted negligence was a question of fact properly submitted to the jury under the instruction in question.

Although we believe it is the better practice to incorporate the specific act of negligence in the instruction, such as adding "causing the tires to spin in a more rapid fashion *than was reasonable and prudent under the circumstances*," such an omission is not reversible error when combined with the general definition of negligence instruction NJI 3.02, as was done in this case.

The defendant next contends that a new trial was in order for the further reason that the trial court erred in receiving into evidence the medical bills incurred by the plaintiff as a result of his injuries. The defendant contends that because the plaintiff was a minor and the medical bills constitute a claim of a third party (plaintiff's parents), the probative value of the evidence was substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. See Neb. Rev. Stat. § 27-403 (Reissue 1979).

It cannot be contended that the medical bills were not relevant to the issue of damages, even though the plaintiff did not submit a claim for their amount. The bills were fairly detailed concerning the extent of the plaintiff's injury and the subsequent medical attention incurred. The trial court gave the following cautionary instruction concerning the use for which the medical bills were offered:

Certain exhibits have been offered and received in evidence generally described as hospital and medical bills incurred as a result of hospital and medical care given the plaintiff. They were received in evidence for the limited purpose of reflecting the nature and extent of such hospital and medical care, not to prove the amount charged therefor.

If you find for the plaintiff on the issue of liability, and commence to fix the amount of money which will fairly and reaonsably [sic] compensate him, you are not permitted to allow any damages for the charges incurred as a result of hospital and medical care given the plaintiff inasmuch as they are claims of a third party.

The admission or exclusion of evidence is a matter left largely to the sound discretion of the trial court, and its ruling will be upheld absent an abuse of discretion. *Lincoln Grain v. Coopers*

& *Lybrand*, 216 Neb. 433, 345 N.W.2d 300 (1984). In light of the fact that the evidence was relevant concerning the issue of damages and the trial court's cautionary instruction, we are unable to determine that the trial court abused its discretion in admitting the medical bills into evidence. Perhaps the better practice would have been to eliminate the money amounts.

In the cross-appeal the defendant contends that the district court "erred in overruling defendant's motions for directed verdict or in the alternative to dismiss plaintiff's case, and for judgment notwithstanding the verdict." Brief for Appellee at 26. The defendant seems to base its cross-appeal on the fact that because there were no eyewitnesses to the accident, the plaintiff did not prove his case. We find this submission untenable.

A plaintiff may establish its case by direct or circumstantial evidence. *Barkalow Bros. Co. v. Floor-Brite, Inc.*, 188 Neb. 568, 198 N.W.2d 329 (1972); *Dunbier v. Stanton*, 170 Neb. 541, 103 N.W.2d 797 (1960).

The burden of establishing a cause of action by circumstantial evidence requires that the evidence be of such character and the circumstances so related to each other that a conclusion fairly and reasonably arises that the cause of action has been proved. *Mustion v. Ealy*, 201 Neb. 139, 266 N.W.2d 730 (1978); *Howell v. Robinson Iron & Metal Co.*, 173 Neb. 445, 113 N.W.2d 584 (1962).

Where reasonable minds might draw different conclusions from the evidence, the question as to negligence or contributory negligence under the circumstances is a matter for determination by the jury. *Cullinane v. Interstate Iron & Metal*, 216 Neb. 245, 343 N.W.2d 725 (1984).

The issues involved in this case were properly submitted to the jury for its consideration. Even a cursory review of the record reveals that the evidence, along with the inferences to be drawn therefrom, could support the jury's verdict. A jury verdict will not be disturbed on appeal unless it is clearly erroneous, against the preponderance of the evidence, and so clearly contrary to the findings that it is the duty of the reviewing court to correct it. *Maricle v. Spiegel*, 213 Neb. 223, 329 N.W.2d 80 (1983).

In conclusion, we find that the defendant's motion for a new

trial was improvidently granted; consequently, we reverse and remand with directions to reinstate the verdict of the jury. We do not pass on the issue of "stacking" the uninsured motorist coverage benefits as that issue was not passed upon by the lower court.

The plaintiff is allowed $1,500 for attorney fees in this court. Neb. Rev. Stat. § 44-359 (Reissue 1978).

REVERSED AND REMANDED WITH DIRECTIONS.

KRIVOSHA, C.J., participating on briefs.