BARKALOW BROS. COMPANY, APPELLANT, v. FLOOR-BRITE, INC., APPELLEE.

198 N. W. 2d 329

Filed June 9, 1972.   No. 38232.

Haney, Wintroub & Haney, for appellant.

Emil F. Sodoro, Richard P. Jeffries, and Ronald H. Stave, for appellee.

Heard before WHITE, C. J., BOSLAUGH, McCOWN, and CLINTON, JJ., and WARREN, District Judge.

WARREN, District Judge.

This is an action brought by plaintiff Barkalow Bros. Company to recover damages resulting from a fire, occurring in plaintiff's Omaha business building on November 20, 1965, and allegedly caused by the negligence of the defendant Floor-Brite, Inc., which was then providing janitorial services for the plaintiff under contract.

At the close of all of the evidence, the defendant's motion for directed verdict was sustained and plaintiff's petition was dismissed. Plaintiff contends that the trial court erred in thus failing to submit the question of defendant's negligence to the jury.

Plaintiff's evidence established that defendant had assigned one employee, James Boeckman, Sr., the responsibility for 5-day-a-week cleaning of the first floor office area and a portion of the basement of plaintiff's building; and that Boeckman, accompanied by his two sons, James (Jim) Boeckman, Jr., then 11 years of age, and Daniel Boeckman, then 13, arrived at the building at about 5 p.m. on the day of the fire, a Saturday. Auditors had been working in the otherwise unoccupied building earlier in the day, but it is not clear from the evidence whether they were in the building during the cleaning process. The two sons aided Boeckman in his customary cleaning duties, which included emptying waste baskets and ash trays, dusting furniture, sweeping floors, and mopping lavatories. A fabric collector bag on a steel frame was wheeled about and used by Daniel as a receptacle into which he emptied both waste-

baskets and ash trays from about 15 desks. Daniel testified that he examined the contents of each ashtray to see whether any cigarette or cigar stubs were still lighted before dumping the contents into the collector bag, and on completion of the rounds emptied the contents of the collector bag into steel waste barrels, located inside the ground floor garage. The empty collector bag was then moved to the basement, where the area immediately surrounding the storage room was swept and about a half cup of dust was placed in the collector bag, which was then folded on its collapsible frame and stored immediately to the right of the door, in a storage room under the basement stairway. The sole evidence relating to pipe smoking in the building was the almost casual testimony of Boeckman, Sr., that he lit his pipe "just before we quit."

Jim testified that right after dumping the dust sweepings into the collector bag and before pushing it into its storage room he told his brother Daniel that he smelled smoke, but Daniel replied that it was just the dust that they had picked up. No smoke was seen, and no further investigation was made. Boeckman, Sr., did not hear the conversation or learn of the incident that day. Boeckman, Sr., then finished cleaning the lavoratories, placed a mop and bucket in the storage room, noticed nothing unusual, and left with his two sons at approximately 6 p.m. A fire alarm was turned in at 8:24 p.m. The Omaha fire department captain who led the first company to the fire testified that the flames were coming from the enclosed storage area under the basement stairs at about the third step up from the bottom landing, which would have been in the south portion of the storage area. The storage room was approximately 17 feet long, with the entrance door opening west at the extreme north end, and the bottom landing at the south end.

Plaintiff's theory of negligence, relying entirely on circumstantial evidence, is that the fire was caused by

the negligence of defendant's employee and his two sons in somehow placing a lighted cigarette, cigar stub, or burning pipe ashes in the collector bag, and leaving them in that receptacle to start the fire when they left the building. Defendant contends that to so find, a jury would have to rest one inference upon another, one presumption upon another.

In every case, before the evidence is submitted to the jury, there is the preliminary question for the court to decide, when properly raised, not whether there is literally no evidence, but whether there is any evidence upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the burden of proof is imposed. Weston v. Gold & Co., 167 Neb. 692, 94 N. W. 2d 380.

Before the court can apply this rule to the facts, there are two preliminary issues relating to evidence which the court must decide.

First, defendant contends that it is not liable for the negligence, if any, of the two Boeckman sons, because they were not employees of the defendant, and because their employee Boeckman, Sr., had no authority to procure or permit such assistance.

The basic proposition set forth in an extended annotation at 25 A. L. R. 2d 984, is a follows: "An employer is not liable for negligence of one whom his employee procures or permits to assist in the work without proof that the employee had authority from the employer to procure or permit the assistance."

A well recognized exception to that rule is also annotated. "Where there has been a continuous or customary use of an assistant by the employee, and the employer has known of this practice and acquiesced in it, the employer is liable for the negligence of the assistant as though actually employed by himself." 25 A. L. R. 2d 984 at 991. See, also, 57 C. J. S., Master and Servant, § 564a, p. 280.

This court has similarly ruled, although stating the

exception in terms of "implied authority" rather than in terms of "acquiesence." Levin v. City of Omaha, 102 Neb. 328, 167 N. W. 214 (1918).

It is undisputed in the record that the defendant's employee Boeckman, Sr., was paid on a per job basis for each building he cleaned, and had frequently utilized the assistance of one or both of his sons in cleaning plaintiff's building during the 5 months of his employment prior to the fire. The question then presented by the record is whether the defendant through its officers knew of the practice of Boeckman, Sr., in utilizing family help and had acquiesced in that practice.

Without detailing the evidence, the record demonstrates by the testimony of defendant's president, its vice president, and its office manager, that prior to the fire the practice of using family assistance was widespread among the defendant's 475 cleaning employees, that the supervisor of Boeckman, Sr., had to be aware of the practice because he visited the job site on a day-to-day basis, that there was no company policy prohibiting the use of family help, that the policy of paying the employee by the job rather than by the hour did in fact encourage such practice, and that after the fire in question and the realization that the actions of the Boeckman sons might create company liability, a strict rule prohibiting such activity was adopted and enforced by the defendant company. We think the evidence comes squarely within the exception stated above, and the rule most recently stated as follows: An employer is liable for negligence of an assistant where the employer has knowledge of customary and continuous use of an assistant by an employee. Mahan v. Litton (Ky: App.), 321 S. W. 2d 243. The acquiescence of defendant in the use of family assistants by its cleaning employees was well established by the record, and without finding that the Boeckman sons were negligent, we hold that their acts or omissions were those of the defendant under the doctrine of respondeat superior.

Second, we must consider plaintiff's contention that the trial court erred in refusing to allow expert testimony as to the cause of the fire. Plaintiff's first expert, captain George Hamann, properly testified as to the place where the fire originated, based upon his observations during the fire-fighting and on his post-fire inspection of the damaged basement. Following this, the witness was given a voluminous hypothetical question and asked to state his opinion "as to the cause or origin of the fire?" In several attempts to answer, the witness responded: "Careless smoking. Like dumping—might be something lit in the ashtray. The man was supposed to have been smoking a pipe. He dumped his ashes some place. The man was smoking—a pipe. That is it, then." On defendant's motion, the answers were stricken, and we think properly so. "While an expert will be permitted to express his opinion, or even his belief, he cannot give his opinion upon the precise or ultimate fact in issue before the jury, which must be determined by it." Caves v. Barnes, 178 Neb. 103, 132 N. W. 2d 310. It is evident from the nature of the question and the answers given that the purpose of the hypothetical question was to elicit an opinion as to whom was to blame for starting the fire, and not as to the physical cause of the combustion.

The hypothetical question, as posed, was an indirect attempt to get an expert opinion as to the ultimate fact, the determination of which is the sole province of the jury. Plaintiff makes the same complaint with regard to the court's refusal to allow its second expert, Daniel Mulcahey, to answer the same hypothetical question. The question asked was for the same ultimate conclusion as that asked of captain Hamann, and was objectionable for the same reason. It was within the trial court's discretion whether to allow the expert witnesses to answer the hypothetical question, and its ruling will not ordinarily be disturbed on appeal unless there is a clear showing of abuse. Trial courts have broad discretion

in the general conduct of a trial, and we do not believe it was abused in this instance.

Plaintiff maintains that there is a reasonable inference the fire started from a lighted cigarette or cigar butt dumped into the collector bag. No evidence exists that a burning cigarette or cigar was in an ash tray at the Barkalow Bros. building during cleanup on the day in question, or that any burning tobacco product was dumped into the collector bag. On the contrary, plaintiff, itself, adduced proof by the testimony of Daniel Boeckman that he had examined the contents of each ash tray by looking at it and found no cigarettes or cigars that were lighted. Second, plaintiff infers that a burning cigarette or cigar butt was not emptied out, but remained in the collector bag when it was folded and stored away. The evidence of plaintiff directly contradicts such a further inference, in that the testimony was that Daniel Boeckman dumped the first floor accumulation of wastepaper and ash tray contents from his collector bag into a metal waste barrel inside the garage, before proceeding to the basement with the collector bag. Admittedly, there was no fire in the garage where the steel barrels were located. The practice was to take the collector bag off the frame, hold it upside down over the barrel and shake it to empty its contents. There is absolutely no evidence that a lighted cigarette or cigar (of which there is no evidence) stayed in the collector bag after it was emptied. The final necessary inference is that the fire was started within the collector bag and then spread to the building itself. The evidence that the fire in question began in the basement area where the collector bag was stored can hardly give rise to a presumption or inference that there was any relationship between the two. The evidence showed storage of many flammable items in the 17-foot-long room under the stairway, as well as the presence of plaintiff's junk items which had collected therein over many years. The plaintiff's evidence was

that the folded collector bag was placed immediately inside the door to the storage room and to the right, which would have placed it underneath the upper stairs of the staircase. There is no evidence that the collector bag was pushed far enough back in the storage room to proximate the third step. The storage room area contained a pull-chain type of electric light, wiring thereto, a steam pipe running through it, and wooden beams, shelving, and wainscoating, all in a 60-year-old building. The storage room door was closed but not locked. The only restrooms in the building were located in the basement in near proximity to the storage room, and restroom supplies were stored therein. The areas of speculation as to the cause of the fire might well run the gamut from defective wiring to spontaneous combustion to arson to negligence of a third person entirely unconnected with defendant. The smelling of smoke by James Boeckman, Jr., was unexplained, but he and his brother quickly determined he was mistaken and nothing more transpired in that respect. The reasonableness of the actions of the Boeckman sons, at the time one thought he smelled smoke and the other instantly denied its existence, must be judged as of that moment in the light of what they then knew, and not in the light of the fact that a fire was reported in that basement 2½ hours later. There is no evidence that anything else unusual or suspicious occurred from that time to the time the Boeckmans left the building. The evidence demonstrates that the sons worked under their father's immediate supervision and did their cleaning duties exactly as he directed and in a reasonable manner.

Plaintiff may establish its case by circumstantial evidence as well as by direct evidence, yet circumstantial evidence is not sufficient to sustain a verdict unless the circumstances proved by the evidence are of such nature and so related to each other that the conclusion reached by the jury is the only one that can fairly and reason-

ably be drawn therefrom. Or, to phrase it differently, the evidence must be sufficient to make the theory of causation reasonable and not merely possible. Conjecture, speculation, or choice of possibilities is not proof. There must be something more which will lead a reasoning mind to one conclusion rather than another. Raff v. Farm Bureau Ins. Co., 181 Neb. 444, 149 N. W. 2d 52.

Presumptions and inferences may be drawn only from facts established, and presumption may not rest on presumption or inference on inference. Negligence is a question of fact and may be proved by circumstantial evidence and physical facts. However the law requires that the facts and circumstances proved, together with the inferences that may properly be drawn therefrom, indicate with reasonable certainty the negligent act charged. R & S Corp. v. Barnes, 182 Neb. 431, 155 N. W. 2d 379.

In view of the foregoing, we find that the evidence of negligence on the part of the defendant is too conjectural and speculative to require a reversal of this cause. The judgment of the trial court dismissing plaintiff's petition pursuant to a motion for directed verdict is affirmed.

AFFIRMED.