So Soo Feed & Supply Co., a corporation, doing business as So Soo Feed & Supply, appellant, v. Max Morgan et al., appellees.

220 N. W. 2d 25

Filed July 11, 1974. No. 39323.

Smith, Smith & Boyd, for appellant.

Roy I. Anderson, for appellees Morgan.

Heard before White, C. J., Spencer, Boslaugh, McCown, Newton, Clinton, and Brodkey, JJ.

Clinton, J.

This cause commenced as an action by the plaintiff to foreclose a contractor and materialman's lien arising out of the sale and erection of a grain drying bin. The defendant purchaser, Max Morgan, answered alleging, among other things, breach of implied warranty of fitness and, in the first cause of action of a cross-petition, claimed damages in the sum of $2,500 to a quantity of milo stored in the dryer bin. The defendant alleged: "k. The drying unit was defective causing a fire in

the structure which overheated approximately 4,000 bushels of milo resulting in damage to the milo and grain bin structure." The trial court entered judgment for the plaintiff in the foreclosure action and rendered judgment for the defendant on the cross-petition in the amount claimed. No appeal is taken on the foreclosure decree. Plaintiff has appealed from the judgment on the cross-petition.

The issue which is determinative on this appeal is the sufficiency of the evidence to show that a defect in the drying unit caused the fire and the claimed consequential damage to the milo.

The evidence shows the following. The plaintiff, pursuant to a contract with the defendant, furnished and erected the foundation, the bin, floor supports, and a drying unit. The defendant furnished the electrical installation through a third party and also furnished and had installed and connected to the dryer the propane fuel supply system which consisted of a fuel tank, pressure regulator, pipes, and fittings. The dryer did not function to the defendant's satisfaction. He made numerous complaints. He testified: "They just couldn't get the thing to burn right. It was throwing yellow flame, and it just wouldn't operate. It would go out occasionally." The plaintiff, because of the complaints, worked on the unit. The plaintiff suggested that the defendant make wiring changes. The defendant contacted his electrician and his rural electric company. The latter made some changes; the electrician did not. Defendant was still not satisfied with the operation. One of the plaintiff's representatives suggested to him that the fuel installation should be modified to feed to the burner liquid propane rather than vapor. This was then done by the defendant's fuel supplier apparently a few days before the fire.

On the evening before the fire a representative of the plaintiff came to the farm. The defendant testified that this representative "messed with the wiring." After

the representative left, the defendant inspected the dryer. He testified: "Q. Did you go out to see the drying unit after he left? A. Yes, I believe I did go see if it was running. Q. Was it working or not? A. It was working correct. It had the pressure, or what I call correct. It was burning. Q. Then what happened next? A. Well, that night it burnt all the gas out and caught on fire underneath. A. Did you see the fire? When did you know about it? A. I actually never saw the fire. My wife smelled the fire and told me. She said, 'I can smell something burning.' Q. When was that? A. When she told me? I believe in the evening, and I crawled in the bin and sure enough it was so hot you couldn't hardly get in the bin. And the gas had all—was all gone. Q. Did you have to have the fire department? A. No, I never had the fire department. I contacted Jackson. I was not sure that it had burned. I mean I never saw no fire, and the fan was running, which I never shut it off to look. And so I contacted them and said, 'This thing is just overly hot.' " Four of the 2 x 12 wooden floor supports were burned and charred. These were replaced by the plaintiff with metal supports pursuant to the original contract and a prior agreement made during installation at which time metal supports had not been available. The dryer and power units except for smoke stains were not damaged. The defendant had the electric motor cleaned after the fire.

On cross-examination the defendant testified: "Q. Are you claiming that the fact that he messed around with the wires, that this caused the fire? A. I'm not saying that caused a fire, but I know he messed with the wires. Q. You don't really know what did cause the fire, do you? A. Right, I don't know."

The record is devoid as to any explanation as to what defects in the drying unit could cause the fire. There is no testimony by anyone as to how the unit functions. If the burning unit flared, as seems likely, was this

280

caused by the unit, or by a defective gas pressure regulator in the propane system which was furnished by the defendant and installed by a third party? There is no evidence that either the dryer or the fuel system were inspected after the fire for defects or lack of defect. As above noted, the defendant seems to imply that the "messing with the wires" caused the fire. There is no evidence to show the fire originated in the wiring, or it was even damaged in the fire, or that it required replacement. No expert testimony was adduced.

The cause of a fire may sometimes, of course, be proved by circumstantial evidence. Sometimes other evidence, including perhaps expert testimony, may be required. Whether an expert opinion is necessary or permissible to establish the cause of a fire depends upon the nature of the case. Mathine v. Kansas-Nebraska Nat. Gas Co., Inc., 189 Neb. 247, 202 N. W. 2d 191. See, also, Bayse v. Tri-County Feeds, Inc., 189 Neb. 458, 203 N. W. 2d 171. Expert testimony may be required where the circumstances and nature of the fire are such that the trier of the fact could not readily infer the cause unaided by expert testimony. 32 C. J. S., Evidence, § 546(82), p. 309. Circumstantial evidence alone is insufficient to warrant a recovery in a civil case unless the circumstances proved are of such a nature and so related to each other that only one conclusion can reasonably be drawn therefrom. Barkalow Bros. Co. v. Floor-Brite, Inc., 188 Neb. 568, 198 N. W. 2d 329. Conjecture, speculation, or choice of possibilities is not proof. There must be something more which will lead a reasoning mind to one conclusion rather than the other. Barkalow Bros. Co. v. Floor-Brite, Inc., *supra.*

The finding of the trial court was clearly wrong and the judgment against the plaintiff on the defendant's cross-petition is reversed and the cause remanded with directions to dismiss.

REVERSED AND REMANDED WITH DIRECTIONS TO DISMISS.