PENDLETON WOOLEN MILLS, AN OREGON CORPORATION, APPELLEE, V. VENDING ASSOCIATES, INC., A NEBRASKA CORPORATION, APPELLANT.

237 N. W. 2d 99

Filed December 24, 1975. No. 40062.

Haney, Hansen & Katz, for appellant.

Richard L. Lydick and Zweiback & Laughlin, for appellee.

Heard before WHITE, C. J., BOSLAUGH, CLINTON, and BRODKEY, JJ., and MORAN, District Judge.

BRODKEY, J.

Appellant, Vending Associates, Inc., a Nebraska corporation, appeals to this court from a judgment entered against it by the municipal court of the City of Omaha, in favor of Pendleton Woolen Mills, an Oregon corporation, in the amount of $2,223, plus costs, representing water damage allegedly caused to the building of the appellee by the negligence of the appellant in failing to maintain and repair a certain soda pop vending machine owned by appellant corporation, and placed by it on the premises of appellee. The judgment was appealed to the District Court for Douglas County, which affirmed the judgment of the municipal court, based on the record of the trial made in the municipal court. Vending Associates, Inc., then perfected its appeal to this court. We reverse and dismiss.

It appears that the damage in question occurred sometime between July 3 and July 6, 1971. A large quantity of a mixture of water and syrup was found on the floor

in the vicinity of a soft drink vending machine on the third floor of the Pendleton Woolen Mills factory at 9th and Douglas Streets in Omaha. The water apparently had seeped into the second floor of the building and finally into the basement. Conveyor belts and a chute for moving crates of merchandise between the floors were also found to be waterlogged and covered with a sticky or gummy substance. Testimony was presented that water was seen coming from the bottom and rear of the soda pop vending machine which was of the type that mixes water and syrup in a cup. The machine obtained its water supply from a water pipe in the building to which it was connected by copper tubing.

The record is not clear as to the relationship between the parties with respect to this machine, i.e., whether a lease of the machine to appellee or another form of bailment was involved. No lease or written contract was introduced into evidence setting out the rights and duties of the respective parties. In its petition, plaintiff does not specifically allege the existence of a lease, but merely states: "That at all times material herein the plaintiff *provided space* in its place of business at 911 Douglas Street, Omaha, Douglas County, Nebraska, for the defendant to maintain vending machines thereon, which machines were under the sole care, control and maintenance of the defendant." (Emphasis supplied.) The only testimony with reference to the nature of the relationship between the parties was given by the witness William R. Parker, who was employed by Pendleton Woolen Mills as the administrative manager. He testified that there was no written agreement concerning the machine with Vending Associates, nor had he personally negotiated any oral agreement. He was asked the following question by counsel: "All right. Insofar as this particular machine is concerned, what was Pendleton's relationship with Vending Associates?" He replied: "They would supply the necessary ingredients for this machine so that our people could purchase

drinks at this machine." The evidence is undisputed that an employee of Vending Associates did check the vending machines on a daily basis, and replenished the necessary supplies, such as syrup, etc., and also performed minor repairs. Witness Parker also testified that if anything went wrong with one of the machines, and it failed to function properly, they would immediately call Vending Associates, who, in turn, would send out a qualified repairman to fix it. He also testified that it was necessary to have a key to open the machines to make repairs, etc., but that Pendleton was not given and did not have a key.

In its brief filed in this appeal, the appellant assigns as grounds for reversal that the District Court erred in finding that Vending Associates was negligent in its maintenance of the pop machine; and also that it erred in finding that the occurrence and alleged damages were proximately caused by any negligence of Vending Associates; and further that Pendleton did not sustain its burden of proving the foregoing matters by a preponderance of the evidence.

We first consider the issue of negligence. In its petition filed in the District Court in this matter, Pendleton alleges: "That on or about July 4, 1971, a water valve on one of said vending machines malfunctioned; that the malfunction was caused by defendant's negligence in failing to properly maintain and replace used and worn parts." This is the sole and only allegation of negligence contained in the petition, and in order to recover, Pendleton is obliged to establish those specific allegations of negligence, and no others.

It is clear from appellee's brief that it bases its right to recovery and justifies the judgment it obtained on the theory that Vending Associates had a duty to keep the machine in order, because it was a "dangerous instrumentality," particularly in view of the fact that it was connected to the water supply. It relies principally upon the case of Hickman v. Parks Construction Co., 162 Neb.

461, 76 N. W. 2d 403 (1956), and cites that case for the proposition that "* * * where a party is responsible for a dangerous place, agency, instrumentality, or operation likely to cause injury or damage to persons or property rightfully in its proximity, * * * he is charged with the duty of taking due and suitable precautions to avoid injury or damage to such person or property, and his failure to take such precautions constitutes negligence." That case, however, involved an unlighted and unguarded excavation and is clearly distinguishable on its facts from the situation in the instant case. We do not believe that the pop machine involved in this case could in any way be considered as a "dangerous instrumentality" in a class with firearms, explosives, propane gas systems, scaffolding, high tension electrical lines, and other items of a similar nature. The mere fact that property, if used negligently, could cause harm to persons or property, does not ipso facto make such property a "dangerous instrumentality," within the purview of the rules stated above. See 11 Words and Phrases, p. 112 et seq., for examples of various items which have been held to be, and also not to be, a "dangerous instrumentality."

However, we do not decide this case on the issue of whether Vending Associates was negligent under the facts of this case. We conclude that Pendleton was still not entitled to recover judgment against appellant because of a total lack of evidence establishing that any negligence attributable to Vending Associates was the "proximate cause" of either the leak or the damages; or to state it more accurately, that there was any "causation in fact" between the alleged negligence, and the occurrence and the water damage.

In an action based upon negligence, the plaintiff, in order to recover, must establish not only the negligence of the defendant, but also that such negligence was the "proximate cause" of the occurrence, accident, or harm; and also the proximate cause of the resulting damages. "Proximate cause," as used in the law of negligence, is

that cause which in a natural and continuous sequence unbroken by an efficient intervening cause, produces the injury, and without which the injury would not have occurred. Weichel v. Lojka, 185 Neb. 819, 179 N. W. 2d 112 (1970). Also, this court in 1969 approved a standard instruction for trial judges to give to juries involving a definition and an explanation of "proximate cause." This instruction reads, in part, as follows: "By 'proximate cause' is meant a moving or effective cause or fault which, in a natural and continuous sequence (unbroken by an efficient intervening cause), produces the (harm, accident, injury, collision, occurrence), and without which the (harm, accident, injury, collision, occurrence) would not have occurred." NJI No. 3.41.

There is little doubt that the water came from the vending machine in question, but the only evidence in the record as to the cause of the leak was the testimony of William R. Parker, Pendleton's administrative manager, who testified, apparently without objection, that during a telephone conversation with Mr. Irving Gendler, president of Vending Associates, Gendler told him that the leak was caused by a malfunctioning shut-off valve on the machine. No other evidence was offered to show what part of the machine apparatus had malfunctioned. The flood is attributed to the shut-off valve only on the testimony of Parker who related the statement made by Gendler who may or may not have inspected the machine, or received his information from someone who did so. Even the statement of Gendler that the shut-off valve caused the leakage does not, however, prove that the negligence of Vending Associates caused the malfunction. No evidence was presented indicating the location of the shut-off valve in the machine, or how it operates, or, if in fact, it did cause the leak. The valve itself was not introduced in evidence, nor was there any testimony that a regular inspection would have detected a faulty or weakened shut-off valve or whatever part caused the leak. This court, in the past, has em-

ployed both the "substantial factor" test, and the "but for" test for determining causation in fact in negligence cases. See, for example, Landmesser v. Ahlberg, 184 Neb. 182, 166 N. W. 2d 124 (1969); Beranek v. Petracek, 184 Neb. 516, 169 N. W. 2d 275 (1969). Pendleton offered no proof that the absence of regular inspection was a "substantial factor" in causing the valve to malfunction, or that "but for" the absence of such inspection, the leak would not have occurred. Speculation and conjecture are not sufficient to establish causation. In Barkalow Bros. Co. v. Floor-Brite, Inc., 188 Neb. 568, 198 N. W. 2d 329 (1972), this court stated "* * * the evidence must be sufficient to make the theory of causation reasonable and not merely possible. Conjecture, speculation, or choice of possibilities is not proof. There must be something more which will lead a reasoning mind to one conclusion rather than another. Raff v. Farm Bureau Ins. Co., 181 Neb. 444, 149 N. W. 2d 52."

This court has also stated: "Misfortunes do occur which result from inevitable accident. A wire may have some defect which the most astute care will not discern. A wire originally good may come to be defective and break, when no human skill could reasonably be expected to detect it. Such accidents, unaccompanied by any negligence on the part of an electric company, can afford no basis for a recovery. Only insurers against injury are liable for injuries resulting from such accidents." Roos v. Consumers Public Power Dist., 171 Neb. 563, 106 N. W. 2d 871 (1961). The Roos case involved an explosion which resulted from the breaking of a primary conductor wire. The cause of the break was a "fatigue fracture" in the wire. Regarding the defendant's failure to discover the defect in the wire before the break, the court said: "We point out also that there is no evidence that the defendant had any reasonable or practical means of locating the defective place in the line prior to its break, or that it had any

knowledge of the defect. It is not shown that any special equipment existed that is of general use in the trade, which would have revealed the defect, the non-use of which would amount to a failure to properly maintain the line in the exercise of due care."

It is possible in the instant case that the water leakage was caused by a malfunction which the most astute care on the part of Vending Associates could not have discerned. Although there was no evidence of any "worn-out" parts in the machine, as alleged in the petition, it is possible that such a part, which could not be located by the repairmen or the routemen, in the course of any reasonable inspection, malfunctioned and caused the leakage. The burden was upon the appellee to establish by a preponderance of the evidence that inspection of the machine or of the shut-off valve would have revealed such a defect, and would have prevented the leakage which occurred. It failed to present such evidence. To find for Pendleton, it would be necessary to speculate as to the cause of the leakage, and then further assume that an ordinary reasonable program of maintenance would have prevented the malfunction of such faulty part or parts.

There being no evidence in the record to establish a connection in fact between the negligence of the appellant, if any, and the leakage which occurred, it is clear that the appellee failed to establish an essential element of its cause of action, and hence the municipal court and District Court erred in rendering judgment for the appellee. For this reason, the judgment of the District Court must be reversed, and the cause dismissed.

REVERSED AND DISMISSED.