972 F.2d 906
 Prod.Liab.Rep. (CCH) P 13,260
Robert J. FISCHER; Terri Fischer, Appellees,
v.
RED LION INNS OPERATING L.P., a Delaware Limited Partnership,
Pepsi Cola Bottling Company of Omaha, Inc., a Nebraska
Corporation, Appellant.
 No. 91-2343.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Dec. 12, 1991.
Decided Aug. 13, 1992.
 
 Thomas J. Culhane, Omaha, Neb., argued (Gary Hoffman, on the brief), for appellant.
 Max E. Kirk, Waterloo, Iowa, argued (H. Daniel Holm, Jr., on the brief), for appellees.
 Before BEAM, Circuit Judge, HEANEY, Senior Circuit Judge, and LOKEN, Circuit Judge.
 BEAM, Circuit Judge.
 
 
 1
 Pepsi Cola Bottling Company of Omaha (Pepsi) appeals from a jury verdict finding it liable for injuries suffered by Fischer due to an electric shock he received while operating one of Pepsi's vending machines. Pepsi alleges that: 1) the trial court erred in instructing the jury that Pepsi had a duty to inspect its vending machine for defects; 2) if a duty to inspect did exist, there was insufficient evidence to present the issue of inspection to the jury because Fischer failed to prove what would constitute a reasonable inspection; 3) the evidence was insufficient to support a finding of proximate cause; 4) the trial court effectively and improperly instructed the jury that Pepsi was an insurer against all possible injuries to persons who came in contact with its vending machine; and 5) the trial court erred in not directing a verdict in its favor. We affirm the district court.
 
 I. BACKGROUND
 
 2
 On March 4, 1987, Fischer was in Omaha, Nebraska attending a seminar, and was a guest at the Red Lion Inn. At the end of the seminar's first day, Fischer returned to the hotel for a swim. Following his swim, Fischer visited the eleventh floor of the Red Lion to purchase a pop from the vending machine. Fischer was still wearing his wet swimming trunks and was barefoot. As he inserted his money into the vending machine, an electrical current passed through the trunk of his body. Fischer returned to his hotel room and reported the incident to the service desk. Later that evening Fischer experienced a burning sensation while urinating.
 
 
 3
 Upon his return home, Fischer began experiencing pain during as well as difficulty sustaining an erection. This led to problems with his sexual relationship with his wife. When his condition persisted, he sought medical treatment.
 
 
 4
 Responding to a call by Red Lion, James Renner, a service technician employed by Pepsi, inspected the vending machine on March 9, but found nothing wrong. At the time he performed his inspection, Renner was wearing tennis shoes with rubber soles. Renner then called John Gruebel, Pepsi's service foreman, and asked him to check the machine to see if he, Renner, had missed anything.
 
 
 5
 On March 11, Gruebel inspected the machine and received an electrical shock when he inserted his key to open it. Gruebel unplugged the machine, followed the power cord from the electrical socket to the rear of the machine, and found that the cord was resting underneath the machine's metal cabinet. He noticed that the power cord's metal conducting wires were exposed and came into contact with the machine's cabinet. Gruebel replaced the power cord and threw away the damaged cord.
 
 II. DISCUSSION
 
 6
 A. Directed Verdict and Sufficiency of the Evidence
 
 
 7
 A motion for a directed verdict cannot be granted unless the opposing party failed to make a case as a matter of law. See Schneider v. Chrysler Motors Corp., 401 F.2d 549, 554 (8th Cir.1968). The directed verdict motion raises the question of the sufficiency of the evidence to support a jury verdict. Id. The Nebraska standard for evaluating the sufficiency of the evidence is substantially similar to the federal standard. Lord v. Wilkerson, 542 F.2d 1034, 1035 (8th Cir.1976); Schneider, 401 F.2d at 555.
 
 
 8
 "A motion for a directed verdict should be granted 'only when all the evidence points one way and is susceptible of no reasonable inferences sustaining the position of the nonmoving party.' " Lord, 542 F.2d at 1035 (quoting Barclay v. Burlington Northern, Inc., 536 F.2d 263, 267 (8th Cir.1976)). Where the evidence presented allows reasonable persons "in a fair exercise of their judgment to draw different conclusions," the directed verdict motion is properly denied. Giordano v. Lee, 434 F.2d 1227, 1231 (8th Cir.1970), cert. denied, 403 U.S. 931, 91 S.Ct. 2250, 29 L.Ed.2d 709 (1971).
 
 
 9
 In addition to the testimony outlined above, Pepsi's service foreman, Gruebel, testified that he saw damaged power cords on Pepsi's vending machines about nine or ten times a year, and that the service department received complaints that a vending machine was causing electrical shocks about once or twice a month. Gruebel also testified that on the day Fischer was electrically shocked, Pepsi had no policy for periodically inspecting the electrical parts of vending machines. Given this testimony, the jury could reasonably conclude that Pepsi was aware that its machines could cause injury, and that Pepsi was negligent in not inspecting its machines. It is unnecessary that "the particular injury or precise form of the injury ... be perceived or foreseen, but if there is some probability of harm sufficiently serious that an ordinary reasonable person would take precautions to avoid it[,] then failure to take such care is negligence." Schneider, 401 F.2d at 556-57.
 
 
 10
 Relying on Pendleton Woolen Mills v. Vending Assoc., Inc., 195 Neb. 46, 237 N.W.2d 99 (1975), Pepsi contends that it had no duty to inspect its vending machine. In Pendleton, a defective valve in a vending machine leaked water and syrup, causing damage to the building it was housed in and to some machinery within the building. The Nebraska Supreme Court reversed a lower court finding of liability because "of a total lack of evidence establishing ... negligence." Pendleton, 237 N.W.2d at 102. The court stated:
 
 
 11
 Although there was no evidence of any "wornout" parts in the machine, ... it is possible that such a part, which could not be located by the repairman or the routemen, in the course of any reasonable inspection, malfunctioned and caused the leakage. The burden was upon the appellee to establish by a preponderance of the evidence that inspection of the machine or of the shut-off valve would have revealed such a defect, and would have prevented the leakage which occurred.
 
 
 12
 Id. at 103. Contrary to Pepsi's assertion, Pendleton does not stand for the proposition that Pepsi had no duty to inspect. Instead, the quoted passage implies that where evidence of a defect is produced and a repairman or routeman through reasonable inspection could have discovered the defect, a finding of liability for a failure to inspect may be proper. Here, uncontroverted testimony of a defective power cord was introduced. Additionally, Gruebel testified that he discovered the cord by simply moving the machine and following the cord from the electrical outlet to the rear of the machine's cabinet. This evidence is sufficient to answer the Pendleton court's objections concerning liability.
 
 
 13
 Pepsi next argues that even if they had a duty to inspect,[1] their failure to do so was not the proximate cause of Fischer's injuries. Proximate cause "is that cause which in the natural and continuous sequence, unbroken by an efficient intervening cause, produces the injury and without which the injury would not have occurred." Travelers Indem. Co. v. Center Bank, 202 Neb. 294, 275 N.W.2d 73, 76 (1979). The basic requirements in establishing proximate cause are that the plaintiff establish but for causation, that the injury be the natural and probable result of the negligence, and that there be no efficient intervening cause. Daniels v. Andersen, 195 Neb. 95, 237 N.W.2d 397, 402 (1975). The testimony outlined above concerning the defective power cord demonstrates that but for causation existed. The second element of proximate cause is satisfied because an electrical shock is the natural and probable result of coming into contact with a metal structure, such as the cabinet of a vending machine, that is sitting on a frayed power cord. According to the expert testimony Fischer produced, his impotence resulted from the electrical shock he received. Although Pepsi argued that the cord may have been damaged by someone moving or shaking the machine and causing it to land on the power cord--an efficient intervening cause--there was testimony that an empty vending machine weighs five-hundred pounds and a fully stocked one weighs six-hundred pounds. Based on the above facts and testimony, the jury was free to find that Pepsi's negligence was the proximate cause of Fischer's injury.
 
 B. Jury Instructions
 
 14
 Pepsi claims that jury instruction sixteen was erroneous because Nebraska law does not impose a duty of inspection.[2] Nebraska, however, has adopted section 388 of the Restatement of Torts. That section currently states that:
 
 
 15
 One who supplies directly or through a third person a chattel for another to use is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner for which and by a person for whose use it is supplied, if the supplier
 
 
 16
 (a) knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied, and(b) has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition, and
 
 
 17
 (c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous.
 
 
 18
 Restatement (Second) of Torts, § 388, at 300 (1965); Libbey-Owens Ford Glass Co. v. L & M Paper Co., 189 Neb. 792, 205 N.W.2d 523, 529 (1973). For a supplier to be liable for failing to exercise reasonable care, it is not necessary for the supplier to know that a particular chattel is dangerous. Restatement (Second) of Torts, § 388 cmt. i (1965). Where the chattel supplied is part of a lot, it is sufficient that the supplier knows some of the chattels in the lot are dangerous. Id. Under certain conditions, the duty to exercise reasonable care includes a duty to inspect. Id. cmt. m. If the chattel is supplied for the suppliers business interest, then he has a duty to warn against any known dangers and to conduct a reasonable inspection of the chattel supplied. Id. § 392 cmt. a, at 320.
 
 
 19
 In Baer v. Schaap, 168 Neb. 578, 97 N.W.2d 207 (1959), Schaap supplied scaffolding for Baer's employer. While using the scaffolding, Baer fell off and injured himself. He subsequently sued Schaap for damages. The court held that the relationship "between a supplier engaged in the business of erecting scaffolds for rental, and a construction company which rented one of the scaffolds ... is one of bailment." Baer, 97 N.W.2d at 214. Quoting American Jurisprudence on bailments, the court went on to state that if a
 
 
 20
 bailment is a lucrative one, the obligation by which [the bailor's] liability to third person's is tested may include a duty to exercise reasonable diligence or ordinary care to see that the instrumentality is in a reasonably safe condition to avoid injuries to such persons, and it has even been held that he is required, in the exercise of such diligence, to inspect the machine, ... and to make such simple and available tests as to its condition as the intended use would suggest to sensible and right-minded persons.
 
 
 21
 Id. at 214 (quoting 6 Am.Jur., § 317), rev'd on other grounds, 106 N.W.2d 468. The court also went on to quote section 388 of the Restatement of Torts.
 
 
 22
 Here, Pepsi owned, maintained, and stocked the vending machine located in the Red Lion hotel. This machine was part of a group of approximately 10,000 machines Pepsi operated. Pepsi made a profit with this vending machine through the sale of pop, and, consequently, installed the machine for its own business interest. Whether we adopt the formalistic approach of Schaap or whether we consider Pepsi a mere supplier of the machine as contemplated by section 388 of the Restatement, Nebraska law imposed a duty of inspection on Pepsi.
 
 
 23
 Pepsi also claims that when read in conjunction with instruction fourteen,[3] instruction sixteen is misleading. According to Pepsi, by omitting language stating that Pepsi was not an insurer from instruction fourteen, the court effectively made Pepsi an insurer of the persons using its vending machines.
 
 
 24
 Jury instructions must be read together, and if taken as a whole they correctly state the law, fairly submit the case, and do not mislead the jury, then there is no prejudicial error. Crewdson v. Burlington Northern R.R., 234 Neb. 631, 452 N.W.2d 270, 278 (1990); Plambeck v. Union Pacific R.R., 232 Neb. 590, 441 N.W.2d 614, 619 (1989); Maloney v. Kaminski, 220 Neb. 55, 368 N.W.2d 447, 456 (1985). It is the appealing party's burden to establish the prejudicial effect.
 
 
 25
 Jury instruction sixteen expressly states that Pepsi's duty was one of "reasonable inspection." Instruction eleven states that Fischer's claim of negligence was that Pepsi failed to "regularly and properly inspect, service and maintain ... [the] vending machine." When the jury instructions are read as a whole, it is difficult for us to see how a jury could have construed them to make Pepsi an insurer. Pepsi has not met its burden of establishing prejudice.
 
 III. CONCLUSION
 
 26
 For the reasons stated above, we affirm the judgment of the district court.
 
 
 
 [1]
 We examine whether Pepsi had a duty to inspect in the following section
 
 
 [2]
 Instruction number sixteen reads as follows:
 You are instructed that it was the duty of Pepsi Cola to properly inspect its vending machine. If you find that the defendant Pepsi Cola could have discovered the dangerous condition of its vending machine by reasonable inspection, then Pepsi Cola had a duty to properly service, maintain and repair said machine.
 
 
 [3]
 Instruction number fourteen reads as follows:
 You are instructed that the duty of the Red Lion Inn to its registered guests is to exercise reasonable care to keep the premises in a safe condition. However, the Red Lion Inn is not an insurer of the safety of its registered guests. It is not required to maintain its premises in such a condition that an accident cannot possibly occur.