WILLIAM S. LEA, PLAINTIFF IN ERROR, V. DANIEL
McLENNAN, DEFENDANT IN ERROR.

1.  **Practice**: SETTING ASIDE VERDICT. Where there is sufficient
    testimony to warrant a jury in finding a verdict, it will not be
    set aside as being contrary to the evidence simply because, in
    the opinion of the court, a preponderance of the testimony is
    against it, it being exclusively the province of the jury to
    weigh the evidence, and judge of the credibility of the wit-
    nesses. But the rule has no application where there is an en-
    tire failure of proof.

2.  ———: ———. L. brought an action against M. for money
    paid by him as surety. M. in his answer pleaded payment by
    the conveyance of certain real estate. The testimony showed
    that M. had conveyed real estate to L. to enable him to sell
    and convey the same, and apply the proceeds on the amount due
    from the defendant. It also appeared that L. had failed to sell
    the real estate. *Held*, the proof failed to show payment.

ERROR to the district court for Dodge county. Tried
below before POST, J.

*E. F. Gray* and *G. L. Loomis*, for plaintiff in error.

*Marlow & Munger*, for defendant in error.

MAXWELL, J.

On the thirty-first day of July, 1871, the defendant,
as principal, and the plaintiff, as surety, executed and
delivered to P. M. Miles, of Litchfield, Illinois, a prom-
issory note for $1,000 and interest. In 1875 judgment
was recovered against the surety on said note. The
surety having paid the same, brought an action against
the defendant, in the district court of Dodge county, to
recover the amount of the judgment and costs.

The defendant, in his answer, admits the execution
of the note, but alleges that on or about the first day of
March, 1875, the plaintiff offered to pay said note, if

defendant would convey to him certain real estate in the county of Montgomery, and state of Illinois; that, on or about the first day of April, 1875, the defendant accepted said proposition and conveyed said real estate to the plaintiff, who accepted the same in full satisfaction of said indebtedness. The plaintiff, in his reply, denies all the facts set forth in the answer.

On the trial of the cause, the jury returned a verdict for the defendant, upon which judgment was entered. The cause is brought into this court by petition in error.

The character of the conveyance of the real estate in controversy is the only matter in dispute, the defendant insisting that it was in full satisfaction of the debt, while the plaintiff contends that he took the title simply to enable him to convey the land, in case it could be sold for a satisfactory price.

A letter, dated March 12, 1875, written by the defendant to the plaintiff, was introduced in evidence, in which the defendant says: "Your favor of the tenth inst. is just at hand; contents noted. Should the lots not sell for enough to pay the note, I will pay the difference just as soon as I am able, and will make it a point to pay it the very first chance. I shouldn't want the lots sold for a little or nothing. Get all you can for them."

The letter of the tenth inst. referred to, was not introduced in evidence, nor were steps taken to require its production.

On the twenty-fifth of March, 1875, one McEwen wrote to the plaintiff that he had a good chance to sell the lots in question for a "gas factory," and requested him to send a deed for the same to the plaintiff. At the same time, and in the same letter, the plaintiff requested the defendant to give him a deed so he could make a title to the property.

On the twenty-eighth of March, 1875, the defendant wrote to the plaintiff: "I have no objection to you hav-

ing the deed for the lots, if you can make a sale of them and pay off the note; for God knows I want it paid, and want it paid with those lots. * * * I will trust to your honor in regard to selling the lots and paying the note with the proceeds." In the same letter he sent an order to C. M. Stetson, his agent, to deliver a deed to the plaintiff for the lots in controversy, as he had made arrangements with him to take them in " settlement of that note that he was security on for him to P. Miles."

On the fifteenth of April, 1875, the defendant wrote to the plaintiff, urging him to send him the note upon which the plaintiff was surety.

On the eleventh of May, 1876, the defendant, in answer to a letter written to him by one Jones, an attorney for the plaintiff, says: "I thought that the five lots that I had would more than pay the note off. Mr. Lea wrote me and said that he had a chance to sell them, and requested me to make him a deed for them. I did so, thinking it would square the matter up. As soon as he got the deed to the lots, I was informed that he had no chance to sell them. * * * I wish that I could square the matter up and have done with it." The letter to which this was an answer was not introduced in evidence on the trial; nor does it appear that any steps were taken by the plaintiff to require its production.

The testimony entirely fails to show that the plaintiff ever made a contract with the defendant to accept a deed to these lots in full satisfaction of the debt. The letters, taken together, clearly show that the deed was delivered to Lea to enable him to sell the lots to the best advantage, and to enable him to convey the same. The defendant appears to have been anxious to pay the debt and save the surety harmless, so far as his means would permit. And throughout the entire transaction it is apparent that he was desirous that the property

12

should be sold for the best price attainable, and that the proceeds should be applied in payment of the judgment.

There is no claim of bad faith on the part of the plaintiff in obtaining the title to these lots; nor is there any pretense that, at the time he obtained title to the same he had not reasonable grounds to believe that he could sell the same to the gas company at a reasonable price. The only question at issue is that of payment, and that the proof fails to establish.

It is urged on the part of the defendant, there being a conflict of testimony, and the jury having found in favor of the defendant, that the verdict and judgment should not be disturbed. The rule undoubtedly is, where there is sufficient testimony to sustain the verdict, that it will not be set aside as being contrary to the evidence simply because, in the opinion of the court, a preponderance of the testimony is against it, it being exclusively the province of the jury to weigh the evidence and judge of the credibility of witnesses. But the rule can have no application in a case like the one at bar, where there is an entire failure of proof on the part of the defendant. The judgment of the district court is reversed and the cause remanded for a new trial.

REVERSED AND REMANDED.