C. H. TONCRAY ET AL. V. DODGE COUNTY ET AL.

[FILED JANUARY 27, 1892.]

1. **Counties:** THE RECORD BOOKS of a county are purchased and paid for by the county and owned by it, although they may relate to private transactions between individuals.

2. **Clerk of District Court:** NEGLIGENCE: LIABILITY OF SURETIES. While the record of a district court is supposed to contain a history of the proceedings before that tribunal, and is under the control of the judge, so far that it shall be a truthful statement of the proceedings, yet the ownership of the books themselves is in the county; and for any dereliction of official duty in the clerk of the court, by reason of which the county sustains pecuniary loss, the officer and sureties will be liable on his bond.

3. ———: ———: CASE STATED. One S. was clerk of the district court of D. county, and left nine books of the records of the

Toncray v. Dodge County.

court in the court room nearly four weeks after the adjournment of court. The county had provided an adequate fire-proof vault for the preservation of such books. The books were injured or destroyed by fire, while remaining in the court room. The county thereupon expended $,1321 in the purchase of new books and transcribing from those injured by fire. *Held*, That the county was entitled to recover the value of such books and labor and that the questions were fairly submitted to the jury.

ERROR to the district court for Dodge county. Tried below before MARSHALL, J.

*E. F. Gray*, for plaintiffs in error, cited, to the contention that the county had no legal capacity to maintain the action, or authority to incur the expense of rewriting: *Inhabitants v. Fiske*, 8 Cush. [Mass.], 264; *Rasmusson v. Co. Com'rs*, 43 N. W. Rep. [Minn.], 3; *Hallenbeck v. Hahn*, 2 Neb., 397; *Stewart v. Otoe Co.*, Id., 183; *McCann v. Otoe Co.*, 9 Id., 331; *State v. Lincoln Co.*, 18 Id., 283–4.

*Geo. L. Loomis*, contra, in reply: *Parish of Sudbury v. Stearns*, 21 Pick. [Mass.], 148; *Sawyer v. Baldwin*, 11 Id., 492. As to the sufficiency of the bond: *Kopplekom v. Huffman*, 12 Neb., 95; *Tevis v. Randall*, 6 Cal., 632; *Brock v. Hopkins*, 5 Neb., 231; *Ryan v. Bank*, 10 Id., 524; *Fox v. Thibault*, 33 La. Ann., 32; *Cedar Co. v. Jenal*, 14 Neb., 254; *U. S. v. Prescott*, 3 How. [U. S.], 578; *U. S. v. Dashiel*, 4 Wall. [U. S.], 182; *Boyden v. U. S.*, 13 Id., 17; *Redwood Co. v. Tower*, 28 Minn., 45; Murfree, Official Bonds, sec. 464; *Com. v. Comly*, 3 Pa. St., 372; *State v. Harper*, 6 O. St., 607; *Muzzy v. Shattuck*, 1 Denio [N. Y.], 233.

MAXWELL, CH. J.

This action was brought by the county of Dodge against the sureties of Louis Spear to recover the value of certain record books of the district court which it is claimed were destroyed by fire through his negligence. On the trial of

the cause the jury returned a verdict in favor of the county for the sum of $1,200, upon which judgment was rendered. It appears from the record that Spear was elected clerk of the district court of Dodge county at the general election in November, 1883; that he filed an official bond with the plaintiffs in error as sureties, and entered upon the duties of his office in January, 1884, and continued as clerk of said court until January, 1888; that during all that time until the court house burned December 31, 1887, Dodge county was possessed of a court house at Fremont, in which was an office for the use of the clerk of the district court; that adjoining this office and opening into the same was a fire-proof vault exclusively for the use of such clerk in which to keep his papers and records; that the district court had been in session on the 3d day of December, 1887, and adjourned, but the records destroyed were permitted to remain in the court room and outside of the vault up to the time of the fire by which they were injured or destroyed on the 31st of December, 1887. Four of these records, viz., the judgment index, general index, judgment docket, and execution docket, were entirely rewritten, and the other five partially copied or rewritten. The county paid $121 for nine new books, and $1,200 for the labor of transcribing said records. There is but little conflict in the testimony as to the actual facts in the case. The points relied upon by the plaintiff in error for a reversal of the case may be summarized as follows:

First—That the petition fails to state a cause of action against the sureties.

Second—That the bond sued on, being made to the people of Dodge county, of the state of Nebraska, is void.

Third—A failure to allege and prove any breach of condition of the bond.

Fourth—Admission of improper evidence.

Fifth—Error in giving and refusing instructions.

In the elaborate and carefully prepared brief of the at-

torney of the plaintiffs in error it is argued with great earnestness that the county has no right to sue for the loss of the records; in other words, that the county has no ownership, title, or right to the records in question and that therefore it has suffered no wrong. The county provides the records and a place to keep them; in other words, the county, through its county board, purchases the books and provides a place of supposed safety to keep them in. For this purpose a court house is erected with fire-proof vaults and a large amount of money annually expended by the county in providing the necessary conveniences and protection of various records of the different departments of the county government, as the county clerk, county treasurer, county superintendent, county judge, clerk of the district court, etc. All these records, although to a great extent they relate to private transactions between individuals, yet are public records and open to public inspection. They are owned and kept by the county for the use of all who may have occasion to examine them. The county board thus has a general supervision over them, and being county property it is the duty of such board to care for and protect them. If this were not so, then any person who felt so disposed could take any record he chose out of any county office and carry it away and the county would be powerless to prevent the wrong; and if he would carry one he would have the same right to carry all of them away and the county be remediless. It is evident that no such right exists and that the county board may bring an action to protect the county records, and for their loss or destruction. Not only may it do this, but should any county official be guilty of any impeachable offense in connection with the duties of his office, such as the destruction or mutilation of records in his care, the county board, after a fair trial, might remove him and appoint another person in his place in order that the integrity of the records should be preserved. (*State v. Meeker*, 19 Neb., 444; *State v. Oleson*, 15

Id., 247.) It thus becomes the duty of the board to see that the several officers perform their duties. The first objection therefore is untenable.

The second objection, that the bond was to the people of Dodge county, is answered by the case of *Huffman v. Kopplekom,* 8 Neb., 346. In that case the bond was given to the state and it was held to be a mere irregularity, and the ruling in that case is applicable in this.

The third objection is that there was no breach of the condition of the bond.

Sec. 12, ch. 10, Comp. Stats., provides that "All official bonds shall be obligatory upon the principal and sureties, for the faithful discharge of all duties required by law of such principal, for the use of any persons injured by a breach of the condition of such bonds." Now, did Mr. Spear faithfully perform his duty in leaving the records out of the vault? This was, under the circumstances, a, question of fact to be determined from the evidence. If he did faithfully perform his duty in that regard, then neither he nor the sureties on his bond would be liable. If, however, he did not, then any person injured by such neglect of official trust has a cause of action against him and his sureties. We know of no reason why the county should be excluded by construction from the benefits of the bond. The county is a corporate body—is a person in law, and if it has sustained damages by a neglect of, or violation of, official duty it has its remedy like any other person upon the bond for relief.

Some objection is made to the introduction of certain testimony, which need not be noticed here.

It is claimed that the court erred in giving and refusing certain instructions. The instructions are as follows:

"The jury are instructed that in this case the plaintiff in its petition alleges and claims as follows:

"1. That it is a corporation duly organized as a county.

"2. That the defendant Spear was, at the general elec-

tion in 1883, in said county, duly elected clerk of the district court of said county.

"3. That he, on November 28, 1888, as such clerk, gave his bond in the sum of $5,000, with the other defendants as his sureties, conditioned that said Spear would well and faithfully perform the duties of his said office according to law and the best of his ability, and deliver to his successor at the expiration of his term all books, papers, and moneys that should come into his possession by virtue of said office, and that said bond was duly approved December 4, 1883, and that the said Spear on January 3, 1883, entered upon the duties of his said office.

"4. That said Spear, by virtue of said office, came into possession of all the books, records, and papers belonging to said office, among others the books and records thereinafter alleged to have been burned and injured.

"5. That the plaintiff from January 3, 1884, to December 31, 1887, was the owner of a court house in Fremont, Nebraska, and therein the plaintiff provided for the clerk of the district court an office-room for his sole use, including a large and suitable fire-proof vault sufficient for the safe-keeping of the books, records, and papers of that office.

"6. That during the said term of office of said Spear he occupied said office-room and vault, and had the exclusive use and possession thereof for the safe-keeping of said books, records, and papers, and that it was his duty to keep the same therein.

"7. That said Spear, disregarding his duty to so keep said books, records, and papers, negligently and wrongfully permitted them in the day-time and night seasons to be and remain outside of said vault in his office and in the court room, lying about on chairs, tables, desks, etc., exposed to all the dangers of loss by fire.

"8. That on December 31, 1887, the said Spear, while said books and records were not in actual use, and while

they were lying around in the court room outside of said vault, and where they were wrongfully and negligently permitted to remain by said Spear, and when the same should have been placed in said vault, a fire broke out in said court house and burned and destroyed one general index, one judgment index, one complete record book, one court journal, two appearance dockets, one judgment docket, one execution docket, one court docket, and two naturalization record books, the property of the plaintiffs, and all then in the possession and custody of said Spear by virtue of said office.

"9. That said described books and records were then burned, damaged, and destroyed by reason of the negligence of said Spear in leaving the same in said court room outside of said vault, and that had they been in said vault at the time of the fire they would not have been burned, damaged, or destroyed.

"10. That thereby the plaintiff has been damaged in the sum of $1,200, for which sum it asks judgment. The defendants Toncray, Muller, Knoell, and Brunk in their answer admit the corporative character of the plaintiff; that said Spear was elected and acted as clerk of the district court; that he gave the said bond with the answering defendants as his sureties thereon; that said bond was approved; that said Spear was in the possession of the said records and books as such clerk, and that a fire broke out in said court house as stated in the said petition; and they deny each and every allegation in said petition not admitted by them in their answer. These pleadings, to-wit, the petition of the plaintiff and the answer of the defendants, present the issues to be tried by this jury.

"Second—The jury are instructed that the burden is upon the plaintiff, and it is for it to prove every material allegation of its petition by a preponderance of the evidence. If, upon any one or more of the material allegations of the plaintiff's petition, the evidence is evenly

balanced, or if it preponderates in favor of the defendant, then the plaintiff cannot recover, and the jury should find for the defendant. By a preponderance of the evidence is meant the weight of evidence—that which on the whole evidence, when fully, fairly, and impartially considered by the jury, produces the stronger impression upon the minds of the jury and is more convincing as to its truth when weighed against the evidence in opposition thereto.

"Third—The jury are instructed that the credibility of the witnesses is a question exclusively for the jury to determine. In determining the weight to be given to the testimony of the several witnesses the jury should take into consideration their interest in the result of the suit, if any such is proved, their conduct and demeanor while testifying, their apparent fairness or bias, if any such appears, their opportunities for seeing or knowing the things about which they testify; the reasonableness or unreasonableness of the story told by them, and all the evidence and facts and circumstances proved tending to corroborate or contradict such witness, if any such appear.

"Fourth—The jury are instructed that in determining any of the questions of fact presented in this case, the jury should be governed solely by the evidence introduced before them. The jury have no right to indulge in speculations, conjectures, or inferences not supported by the evidence. Each juror may apply to the subject before him that general knowledge which any man may be presumed to have, yet if he be personally acquainted with any material or particular fact or facts, he is not permitted to mention the circumstances privately to his fellow jurors. Therefore, if any juror knows any particular fact or facts material to the issues in this case it is his duty while sitting as a juror on the trial thereof to keep and remain silent in relation thereto.

"Fifth—The jury are instructed that if, from the evidence in this case, the jury believe that the books and

records in question were those in the possession and custody of said Spear by virtue of his office as clerk of the district court of Dodge county, then the plaintiff is to be regarded as the owner thereof.

"Sixth—The jury are instructed that one of the principal questions for the jury to determine in this case is: Was the damage to, or destruction of, the books and records by said fire due or chargeable to the negligence of the said Spear in caring for them?

"Seventh—The jury are instructed that negligence in a general sense is every omission to perform a duty imposed by law for the protection of one's own property or that of another. Ordinary negligence is the want of such care and diligence as reasonably prudent men, generally, in regard to the subject-matter of inquiry under such circumstances as these under consideration, would use to prevent or avoid the injury complained of.

"Eighth—The jury are instructed that the said Spear, in the care and custody of the books and records in question, was required to use ordinary care in keeping them safe from damage or destruction. If a fire-proof vault was by the county provided for or furnished him, to safely keep said books and records in, and if it was reasonably suitable and convenient for him in the exercise of ordinary care, and in performing the duties of his office, to keep said books and records in said vault, then it was the duty of said Spear in the night season to keep said books and records in said vault, when not in use by him in his office; and if from the evidence in this case the jury believe that said Spear at the time in question failed to exercise such ordinary care for the safe keeping of said books and records, then he was guilty of negligence in relation to that matter; and if from the evidence in this case the jury believe that it was the duty of said Spear in the exercise of ordinary care to have placed said books and records in said vault at the time in question, and that he failed to do so, and that on account

of the failure of said Spear to place said books and records in said vault at the time in question the said books were damaged or destroyed by said fire, then the said Spear and also the other defendants would be liable for the damage to or destruction of said books or records on account of said fire.

"Ninth—The jury are instructed that if from the evidence in this case they believe under the instructions herein given that the books and records in question were damaged or destroyed by or through the negligence of the defendant Spear, then all the defendants would be equally liable with the said Spear, although they had nothing to do with the care or custody of said books or records.

"Tenth—The jury are instructed that if from the evidence in this case they find for the plaintiff, then the jury will from the evidence find, the amount of damages which the plaintiff may be entitled to recover by reason of the damage to or destruction of said books and records.    If the jury so find for the plaintiff, the measure of damages would be the reasonable costs and expense of restoring and replacing said books and records, as nearly as practicable, as they were before the fire but not to exceed the sum of $1,200."

The court, at the request of the defendants below, also gave the following instructions:

"You are instructed by the court that under the evidence in this case, you are to determine whether or not the leaving the books in the court room at the time of the fire was, under all the circumstances, negligence on the part of Spear. If it was not negligence on his part, then you should find for the sureties, Toncray, Muller, Knoell, and Brunke."

And the following, as modified:

"You are instructed by the court that the clerk of the district court was not subject to the directions of the county board as to his duties, but was subject to the directions of the district court or judge thereof. (Modified as follows:) It was the duty of Spear as such clerk to keep his office in

the place provided for him by the county, and it was also his duty to use all the means and appliances provided for him by the county for the safe-keeping of the books and records pertaining to his office in so far as the means so provided were reasonably adapted to render the keeping of said books more safe or secure from injury by fire."

These instructions, taken together, submitted the questions of fact fairly to the jury, and we see no error in them.

A number of instructions were asked on behalf of the defendants below, most of which had already been given by the court, and the others were properly refused. Some objection is made to the amount of the recovery. There is a failure, however, to prove that the amount paid was in excess of the damages. This objection, therefore, is unavailing. There is no error in the record, and the judgment is

AFFIRMED.

THE other judges concur.