| 42 | 33 |
| 54 | 267 |

CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY
v. JAMES F. HILDEBRAND.

FILED OCTOBER 2, 1894.    No. 5293.

1. **Trial:** DIRECTING VERDICT. Where there is testimony which should be submitted to the jury, an instruction which withdraws the case from them is not proper, and it is not error to refuse to give it.

2. **Evidence.** In a civil action, when a fact may be fairly and reasonably inferred from other and all the facts and circumstances proved, it may be taken as established.

3. **Railroad Companies:** FAILURE TO FENCE TRACK: INJURY TO LIVE STOCK: DAMAGES. The evidence *held* sufficient to sustain the verdict.

ERROR from the district court of Sarpy county. Tried below before HOPEWELL, J.

*Greene & Baxter*, for plaintiff in error.

*George A. Magney, contra.*

HARRISON, J.

July 9, 1891, James F. Hildebrand instituted an action in the district court of Sarpy county to recover of the railroad company damages in the sum of $1,000, stating his cause of action in his petition as follows:

"1. The plaintiff complains of the defendant for that said defendant is a corporation doing business under the laws of the state of Nebraska.

"2. That on or about the 6th day of October, 1890, said defendant was operating a railroad through Sarpy county, said road having been open for use for more than six months in said county; and while so operating the same at the time above stated, at a place near Portal on said road, where the defendant is required by law to fence its track

7

but had failed to do so, said defendant, by its agents and employes, ran an engine over and against one black Per_ cheron-Norman stallion known as 'Denmark,' by reason of which said stallion was injured so that he died next day.

"3. The said stallion was the property of this plaintiff, and was of the value of $1,000.

"4. Plaintiff further says that defendant had not fenced its said track at this point, nor provided the same with cattle guards as required by law.

"5. That immediately after said stallion was injured as aforesaid plaintiff notified defendant of the same; and plaintiff has frequently since requested the defendant to pay the damages which he has sustained by reason of the killing of said stallion as aforesaid, but defendant has refused so to do; and plaintiff further says that his damages sustained as aforesaid are $1,000, no part of which has been paid."

The company filed the following answer, to-wit:

"Now comes the defendant above named, and for answer to the petition filed by the plaintiff admits that it is a corporation, and that as such it was operating a line of railroad through the county of Sarpy at the time complained of; that whether the plaintiff is the owner of the stallion mentioned in the plaintiff's petition this defendant has not knowledge or information and therefore denies the same.

"Further answering, the defendant denies each and every allegation contained in said petition, except as hereinbefore stated and admitted."

There was a trial of the issues before the court and a jury, and a verdict for Hildebrand for the amount claimed, $1,000. Motion for a new trial was filed by the company, argued, and overruled, after which judgment was rendered in favor of Hildebrand in the sum of $1,000 and for the costs, to reverse which the company has prosecuted its petition in error herein to this court.

There is no dispute in the testimony with reference to

the facts of the ownership of the horse by Hildebrand
and its value in the sum of $1,000, or the place being one
where the company was by law required to erect and main-
tain fences along its tracks and put in cattle guards, or that
the horse, having broken its halter strap or rope, ran out
of the stable and upon the track near Hildebrand's resi-
dence, at or very near in point of time of the passage of
one of the company's trains which was due there about 7
o'clock P. M. and which came along "on time" and within
a few minutes after the horse reached the track, and which
train was then running at the rate of twenty-five or thirty
miles an hour. At a distance of about one-half of a mile
from the place where the horse went upon the track was a
trestle, at a point where the track of this company crossed
that of the Union Pacific Railway Company. The trestle
was from fifteen to twenty feet in height, and the cross-ties
upon which the rails were laid were, as the testimony dis-
closes, about three or four inches apart, or distant one from
the other, on the one hundred feet commencing at the east-
erly end of the trestle and going over it toward the west,
and beyond this were, in the language of one witness,
"twelve or fourteen or sixteen inches apart, or something
like that." The point where the horse entered upon the
track was in an easterly direction from the trestle, and the
train was a west-bound train, hence both train and horse
were headed toward the west. The horse,—judging from
the hoof marks and other indications,—after getting on the
trestle, had no trouble in traveling over the first hundred
feet where the ties were close together, but when it came
to where the intervals between the ties were wider, it evi-
dently stepped off and thrust its leg or legs down in sev-
eral of the spaces, as there were hairs left on the edges of
the ties in such a position and of a kind and color to clearly
indicate that they had been scraped by the ties from the leg
or legs of this horse, and after passing over some fifteen or
twenty feet of this wider spaced portion of the trestle, the

horse either jumped or, in its attempts and struggles to proceed farther, threw itself from the trestle on the left or southerly side to the ground below, or was struck by the locomotive or train and thrown to the ground, where he was discovered under the trestle, one hundred and fifteen or one hundred and twenty feet from the easterly end, standing upon three legs, the right hind leg being broken and crushed between the hock and pastern joints. It was dark, and no one of the parties who testified at the trial saw or related how the horse fell or was thrown from the trestle. The horse died the day after the accident of the injuries received.

The main question raised by the petition in error and argued in the brief filed is that the verdict was not sustained by sufficient evidence and was contrary to the weight of the evidence. This is directed in the argument to the one point in the testimony of whether there was sufficient —or, indeed, any—evidence to show that the horse was pushed or thrown from the track by the engine or train. The evidence relating to this particular fact was conflicting, but a careful examination and analysis and comparison of all the testimony convinces us that the conclusion of the jury as embodied in their verdict was sustained by the evidence, reached, as it must have been, from a consideration of all the facts and circumstances of the accident, and more particularly the condition of the horse when found under the trestle, the marks and bruises all being upon his right side and of such a character or nature and in such places on his body as to indicate that they were produced by contact with the engine or train, rather than the movement and struggles of the animal when on the trestle; the leg being bruised and the bone crushed rather than broken sharp off; the indications and marks upon the trestle showing that the horse had been pushed or slid along and off at the side, and other physical facts evidential in themselves, and from which we are satisfied that the inferences

drawn by the jury in arriving at the verdict they did were fair and reasonable and warranted by such facts. In civil cases it is sufficient if the evidence, on the whole, agrees with and supports the hypothesis it is adduced to prove; and it is the duty of the jury to decide according to the reasonable probability of the truth. (1 Greenleaf, Evidence [15th ed.], 13a.)

The company prepared and presented the following instruction with a request that it bĕ given: "The jury are instructed that the evidence in this case will not warrant the finding of a verdict for the plaintiff. You will therefore find for the defendant." This was refused, to which counsel for the company excepted, and it was assigned and argued as one of the errors committed by the trial court. Having determined that there was evidence sufficient to sustain the verdict for the plaintiff below, this instruction was clearly wrong, and there was no error in the court's refusing to give it. This case in its facts comes far within the rule of this court that where there is testimony which should be submitted to the jury, an instruction which withdraws the case from them cannot be sustained. The questions of fact in the case were well and fairly submitted to the jury for their determination, and there being sufficient evidence to support their conclusion, it will not be disturbed.

AFFIRMED.