Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
03/17/2023 09:04 AM CDT

Estate of Clay Block by Theresa Hoffman,
Administrator, et al., appellants, v. Estate
of Stephen P. Becker by its Personal
Representative, Kathryn M. Becker,
and Mountain Plains Research, Inc.,
a Nebraska corporation, appellees.

___ N.W.2d ___

Filed March 17, 2023.    No. S-22-153.

1. **Summary Judgment: Appeal and Error.** In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment was granted and gives that party the benefit of all reasonable inferences deducible from the evidence.

2. **____: ____.** An appellate court affirms a lower court's grant of summary judgment only if there are no genuine issues of fact and if, as a consequence, the moving party is entitled to judgment as a matter of law.

3. **Appeal and Error.** An appellate court is not obligated to engage in an analysis that is not needed to adjudicate the controversy before it.

4. **Circumstantial Evidence.** There is no difference between the treatment of circumstantial evidence in criminal and civil cases.

5. **Evidence: Circumstantial Evidence: Proof: Words and Phrases.** There are two kinds of evidence, direct and circumstantial. Direct evidence directly proves the fact in dispute without inference or presumption. Circumstantial evidence is evidence of one or more facts from which the existence of the fact in dispute may logically be inferred.

6. **Evidence: Circumstantial Evidence: Proof.** A fact may be proved by direct evidence alone, circumstantial evidence alone, or a combination of the two.

7. **Circumstantial Evidence: Proof.** Circumstantial evidence is not inherently less probative than direct evidence, and a fact proved by circumstantial evidence is nonetheless a proven fact. A fact finder may draw reasonable inferences from the facts and circumstances proved.

8. **Negligence: Proof.** A plaintiff is not required to prove its theory of negligence by evidence so clear as to exclude every other possible theory. A plaintiff is only required to satisfy the fact finder to the extent required by the applicable burden of proof that the damages occurred in the manner claimed.

9. **Evidence: Proof.** Where there is a conflict in the evidence or where different minds may reasonably draw different conclusions or inferences from the adduced evidence, the matter at issue must be submitted to a fact finder. It is the duty of the fact finder to decide whether the evidence, on the whole, is sufficient to support the hypothesis the evidence is adduced to prove.

10. ____: ____. All that the law requires is that the facts and circumstances proved, together with the inferences that may be logically drawn from them, indicate that the negligence complained of was more likely true than not true.

11. **Proof.** A fact finder cannot reach conclusions based on guess, speculation, or conjecture, because conjecture, speculation, or choice of quantitative possibilities are, of course, not proof.

12. **Trial: Words and Phrases.** The word "speculation" is defined as the practice or an instance of theorizing about matters over which there is no certain knowledge. To "speculate" is to form opinions about something without having the necessary information or facts or to make guesses.

13. **Negligence: Evidence: Juries.** While negligence is an inference to be drawn by the jury from facts established, facts warranting such an inference must be established by evidence, and a jury must not be left to conjecture—to infer not only negligence, but the existence of facts that would constitute negligence.

14. **Trial: Evidence: Presumptions.** Presumptions and inferences may be drawn only from facts established and may not rest on presumption or inference.

15. **Negligence: Presumptions.** Merely establishing that an accident happened does not prove negligence or raise a presumption of negligence, because misfortunes do occur as a result of inevitable accident, which does not afford a basis for a recovery in the absence of any negligence on the part of a defendant.

16. **Trial: Evidence.** Where a plaintiff has shown that competent evidence exists to support the essential elements of a cause of action, and competent evidence to the contrary has been produced, or different conclusions or inferences may reasonably be drawn from the evidence, it is then exclusively the province of the fact finder to determine the weight of the evidence and judge the credibility of witnesses.

17. **Negligence: Evidence: Juries.** Where different minds may draw different inferences from the same facts, whether such facts establish negligence is a proper question for the jury, not for the court; but where it is impossible to infer negligence from the established facts without reasoning irrationally, and contrary to common sense and the experience of an average person, it is not a question for the jury.

18. **Evidence: Juries.** It is the role of the jury to judge the issues of fact in its own way, that is, by the ordinary, natural tests of common sense and reason.

19. **Summary Judgment: Evidence.** In considering a motion for summary judgment, the evidence is to be viewed most favorably to the nonmovant, giving to that party the benefit of all inferences which may reasonably be drawn from the evidence.

20. **Summary Judgment: Evidence: Proof.** The party moving for summary judgment has the burden to show that no genuine dispute of material fact exists and must produce sufficient evidence to demonstrate that the moving party is entitled to judgment as a matter of law if the evidence was uncontroverted at trial. If the movant does so, the burden shifts to the party opposing the motion to produce evidence showing the existence of a genuine dispute of material fact that prevents judgment as a matter of law.

21. ____: ____: ____. To be granted summary judgment for a nonsuit, a defendant must show that one of the required elements of a plaintiff's case cannot be established. Failure of proof concerning an essential element of the nonmoving party's case renders all other facts immaterial.

22. **Negligence: Proof.** To prevail in any negligence action, a plaintiff must show a legal duty owed by the defendant to the plaintiff, a breach of such duty, causation, and resulting damages.

23. **Proximate Cause: Words and Phrases.** A proximate cause is a cause that produces a result in a natural and continuous sequence and without which the result would not have occurred.

24. **Summary Judgment: Evidence.** Summary judgment is not appropriate when more than one inference is deducible from the evidence produced.

Appeal from the District Court for Wayne County: James G. Kube, Judge. Reversed and remanded for further proceedings.

Willis J. Hamilton and Steve Hamilton, of Hamilton Law Firm, P.C., for appellants.

Robert S. Keith and L. Paige Hall, of Engles, Ketcham, Olson & Keith, P.C., for appellees.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Heavican, C.J.

## INTRODUCTION

The plaintiffs appeal from an adverse summary judgment. We moved this appeal to our docket pursuant to Neb. Ct. R. App. P. § 2-102(C) (rev. 2022).

The plaintiffs brought suit against the owner and manager of a commercial building after the decedent, Clay Block, fell to his death from an apartment's small balcony. The defendants moved for summary judgment on three grounds, only one of which is at issue on appeal. The district court granted the motion and dismissed the complaint with prejudice due to a lack of "solid evidence" as to the element of proximate cause. The plaintiffs appeal. Because the plaintiffs showed the existence of a genuine dispute of material fact, we reverse, and remand for further proceedings.

## FACTUAL BACKGROUND

Block was 24 years old when he fell approximately 16 feet from the small balcony of his friend's second-story apartment onto the concrete below. Block did not survive the fall. The balcony was accessible by a large window and was used by the apartment's tenant as an outdoor "smoking lounge." A steel railing ran across the edge of the balcony. The railing was affixed with lag bolts. After Block's fall, this railing and the lag bolts lay on the concrete next to Block's body, "kind of in between him and the building."

The apartment was on the second floor of a commercial building owned by Mountain Plains Research, Inc. Stephen P. Becker was the sole shareholder of Mountain Plains Research, its manager, and its only employee. Based on the evidence in the record, Becker knew that the balcony was used as a smoking lounge and that the steel railing was loose. A tenant of the apartment testified that Becker said he would fix the

railing on multiple occasions. There is no evidence in the record that shows Becker took any steps to have the railing replaced or repaired.

The police were called to the scene and conducted an investigation into Block's fall. The police interviewed two of Block's friends who were present at the time of his fall: Lauren Harms and Marlon Sanchez. The police report indicates that Block, Harms, and Sanchez were on the balcony smoking cigarettes. Harms stated that after finishing their cigarettes, the three stood up on the balcony, Block leaned against the steel railing, and he fell sideways off the balcony. Sanchez said they had just finished their cigarettes when he went to give Block a handshake, and Block leaned back against the steel railing and fell off the balcony.

Approximately 3½ years after the fall, Harms and Sanchez were deposed. Harms testified that she and Block were seated on the balcony facing each other, with the railing to their sides, and that Sanchez was seated on the windowsill. Harms and Block had grabbed each other's hands to stand up on the balcony together. Block's hand slipped out of Harms' hand as they rose, and she tried to grab him: "It happened so quick . . . ." "And the next thing, he's just on the ground, and the [railing] is laying on the ground too." Harms testified that still, "to this day," she did not "understand" how Block fell or how the steel railing fell. "I stood up, I looked down, and he was laying on his back." Sanchez testified that he did not see the precise moment of Block's fall, because his back was turned as he was reentering the apartment. Sanchez heard the railing hit the pavement and Harms' scream; he turned around, "and then they're both gone, [Block] and the railing."

A deputy sheriff testified that he inspected the balcony after Block's fall and observed the area where the steel railing was previously attached. The deputy testified that he observed structural "deterioration" where the railing's lag bolts should have been affixed to the building. Specifically, he observed that the balcony was "somewhat rotted" where the lag bolts

did not work and that "[t]he structure didn't look really sound, really solid, to hold those bolts in."

Block's estate, mother, father, and two minor children brought suit against Becker and Mountain Plains Research, generally alleging that the defendants were negligent in failing to repair or replace the balcony railing, despite notice that it was unsecure and unsafe, and in failing to warn Block that the balcony railing was unsafe. The operative amended complaint alleged that this negligence was a proximate cause of Block's fall.

The defendants moved for summary judgment. They asserted that summary judgment was appropriate in this case, because no eyewitness existed and no one could testify as to how the fall occurred. The defendants maintained that with the lack of eyewitness testimony, there was no way of knowing the cause of Block's fall. The defendants averred that it is at least equally as plausible that Block's fall was caused by (1) the railing's detachment as the plaintiffs allege, (2) Block's loss of balance and failure to negotiate the small area of the balcony, or (3) Block's intoxication. The defendants contended that summary judgment is appropriate when there are multiple equally plausible scenarios, citing our decision in *Swoboda v. Mercer Mgmt. Co.*,[1] because a jury cannot reach a conclusion based on speculation.

The defendants pointed to a report from a toxicologist, which indicated that Block had consumed alcohol, asserting that his intoxication may have caused the fall or, in the alternative, that it was more likely that Block simply lost his balance. The report indicates with 95 percent confidence that Block's whole blood alcohol level was "0.225 - 0.241 gm/ dL," which corresponds to the ingestion of approximately 11 standard drinks. In response, the plaintiffs cited the testimony of multiple witnesses that Block did not appear drunk, including that his speech was not slurred and that he had no

---

[1] *Swoboda v. Mercer Mgmt. Co.*, 251 Neb. 347, 557 N.W.2d 629 (1997).

visible coordination issues. The defendants averred that the evidence could not show the cause of Block's fall: "[Block] can't tell us and the eyewitnesses can't tell us, so we just don't know what happen[ed]."

The district court granted the defendants' motion for summary judgment, finding that the evidence did not raise a question of fact for the jury to decide. The court first determined that Harms and Sanchez "effectively recanted" their previous statements to the police when under oath in their depositions. The court posited that if there was evidence that Block "did actually brush up against the railing or lean against it," a reasonable inference could have been drawn that the instability of the railing "may have possibly" caused Block's fall. Yet, according to the court, no such evidence existed. The court reasoned that the plaintiffs introduced no evidence indicating that Block's fall would have been prevented if the steel railing had been adequately secured.

The court also pointed to the toxicology report, in which the expert "noted testimony from . . . Harms that people at the party were using THC in the form of a 'blunt' [and] that . . . Block 'might have hit the blunt twice.'" The expert opined that "[g]iven the combination of marijuana and alcohol ingested by . . . Block, . . . these drugs were major contributors to the fall which led to his unfortunate death." The court determined that "[t]his is at least a plausible cause for [Block's] fall, along with the possibility that [Block] simply lost his balance." Ultimately, the court determined that "no solid evidence" was introduced that would allow a jury to decide the issue of proximate cause. Because the jury would be forced to speculate about what "actually caused" Block to fall, the court concluded that summary judgment was appropriate and dismissed the plaintiffs' complaint with prejudice. The plaintiffs appeal.

## ASSIGNMENTS OF ERROR

The plaintiffs assign that the district court erred in granting the defendants' motion for summary judgment (1) based on

its erroneous conclusion that there were insufficient facts for a jury to determine the proximate cause of Block's death and (2) by usurping the jury's duty as finders of fact when it engaged in factfinding of disputed, material issues of fact.

## STANDARD OF REVIEW

[1,2] In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment was granted and gives that party the benefit of all reasonable inferences deducible from the evidence.[2] An appellate court affirms a lower court's grant of summary judgment only if there are no genuine issues of fact and if, as a consequence, the moving party is entitled to judgment as a matter of law.[3]

## ANALYSIS

[3] The plaintiffs first assign that the district court erred by granting summary judgment because, ultimately, a jury could not conclude that the defendants' alleged negligence was a proximate cause of Block's fall and resulting death. Before addressing this assignment of error, we first revisit the treatment of circumstantial evidence in civil cases generally and proximate cause specifically. We then resolve the plaintiffs' first assignment of error and determine that it is dispositive of this appeal. An appellate court is not obligated to engage in an analysis that is not needed to adjudicate the controversy before it.[4] Consequently, we do not address the plaintiffs' second assignment of error and do not determine whether the district court erred by engaging in factfinding of disputed issues and usurped the jury's duty as finders of fact.

---

[2] *Buttercase v. Davis, ante* p. 1, 982 N.W.2d 240 (2022), *modified on denial of rehearing ante* p. 587, 985 N.W.2d 588 (2023).

[3] *Id.*; *In re Estate of Lakin*, 310 Neb. 271, 965 N.W.2d 365 (2021), *modified on denial of rehearing* 310 Neb. 389, 966 N.W.2d 268.

[4] *Kozal v. Snyder*, 312 Neb. 208, 978 N.W.2d 174 (2022).

### Circumstantial Evidence
### in Civil Cases

We have been less than meticulous in our language regarding a plaintiff's ability to meet its burden of proof with circumstantial evidence generally, as it relates to the element of causation specifically, and particularly when compared with the State's burden of proof in criminal cases.[5] For example, the defendants in this case rely on propositions of law from *Herrera v. Fleming Cos.*,[6] which provide:

> An allegation of negligence is insufficient where the finder of fact must guess at the cause of the accident. . . . While circumstantial evidence may be used to prove causation, the evidence must be sufficient to fairly and reasonably justify the conclusion that the defendant's negligence was the proximate cause of the plaintiff's injury. . . .
>
> . . . The mere fact that an injury or accident occurred does not raise a presumption of negligence.

The manner in which the defendants in this case rely on these propositions suggests that they may be misleading.[7] We note that in *Herrera*, we determined that "[t]here was no evidence or reasonable inference that [the defendant] created the condition, knew of the condition, or should have known of the condition."[8] Summary judgment was appropriate in that

---

[5] See, e.g., *C.E. v. Prairie Fields Family Medicine*, 287 Neb. 667, 844 N.W.2d 56 (2014); *In re Estate of Price*, 223 Neb. 12, 388 N.W.2d 72 (1986) (Krivosha, C.J., concurring in the result; Shanahan, J., joins); *Anderson v. Farm Bureau Ins. Co.*, 219 Neb. 1, 360 N.W.2d 488 (1985) (Krivosha, C.J., concurring in the result). See, also, G. Michael Fenner, *Circumstantial Evidence in Nebraska*, 19 Creighton L. Rev. 236 (1986).

[6] *Herrera v. Fleming Cos.*, 265 Neb. 118, 123, 655 N.W.2d 378, 383 (2003) (citing *King v. Crowell Memorial Home*, 261 Neb. 177, 622 N.W.2d 588 (2001)).

[7] See *Davis v. Dennert*, 162 Neb. 65, 75 N.W.2d 112 (1956).

[8] *Herrera v. Fleming Cos., supra* note 6, 265 Neb. at 124, 655 N.W.2d at 383.

case because there was *no evidence* of an essential element; thus, an inference was not deducible from the evidence.

[4] We reiterate that there is no difference between the treatment of circumstantial evidence in criminal and civil cases.[9] There is not a higher burden of production regarding circumstantial evidence in civil cases generally, or as to proof of causation specifically.

[5-7] There are two kinds of evidence, direct and circumstantial.[10] Direct evidence directly proves the fact in dispute without inference or presumption.[11] Circumstantial evidence is evidence of one or more facts from which the existence of the fact in dispute may logically be inferred.[12] The law makes no distinction between these two kinds of evidence.[13] A fact may be proved by direct evidence alone, circumstantial evidence alone, or a combination of the two.[14] Circumstantial evidence is not inherently less probative than direct evidence, and a fact proved by circumstantial evidence is nonetheless a proven fact.[15] A fact finder may draw reasonable inferences from the facts and circumstances proved.[16]

[8-10] A plaintiff is not required to prove its theory of negligence by evidence so clear as to exclude every other

---

[9] See, *State v. Stack*, 307 Neb. 773, 950 N.W.2d 611 (2020); *State v. Kofoed*, 283 Neb. 767, 817 N.W.2d 225 (2012); *State v. Pierce*, 248 Neb. 536, 537 N.W.2d 323 (1995); *State v. Buchanan*, 210 Neb. 20, 312 N.W.2d 684 (1981).

[10] *Nebraska Legislature on behalf of State v. Hergert*, 271 Neb. 976, 720 N.W.2d 372 (2006).

[11] *State v. Bromm*, 285 Neb. 193, 826 N.W.2d 270 (2013).

[12] *Nebraska Legislature on behalf of State v. Hergert, supra* note 10.

[13] *Smith v. Fire Ins. Exch. of Los Angeles*, 261 Neb. 857, 626 N.W.2d 534 (2001).

[14] NJI2d Crim. 5.0. See *In re Estate of Clinger*, 292 Neb. 237, 872 N.W.2d 37 (2015).

[15] *Kauk v. Kauk*, 310 Neb. 329, 966 N.W.2d 45 (2021); *Jacobs Engr. Group v. ConAgra Foods*, 301 Neb. 38, 917 N.W.2d 435 (2018).

[16] *Id*.

possible theory.[17] A plaintiff is only required to satisfy the fact finder to the extent required by the applicable burden of proof that the damages occurred in the manner claimed.[18] Where there is a conflict in the evidence or where different minds may reasonably draw different conclusions or inferences from the adduced evidence, the matter at issue must be submitted to a fact finder.[19] It is the duty of the fact finder to decide whether the evidence, on the whole, is sufficient to support the hypothesis the evidence is adduced to prove.[20] All that the law requires is that the facts and circumstances proved, together with the inferences that may be logically drawn from them, indicate that the negligence complained of was more likely true than not true.[21]

[11-14] A fact finder cannot reach conclusions based on guess, speculation, or conjecture,[22] because conjecture,

---

[17] *Davis v. Dennert, supra* note 7.

[18] *McVaney v. Baird, Holm, McEachen*, 237 Neb. 451, 466 N.W.2d 499 (1991).

[19] *Main v. Sorgenfrei*, 174 Neb. 523, 118 N.W.2d 648 (1962); *Fulcher v. Ike*, 142 Neb. 418, 6 N.W.2d 610 (1942).

[20] *Chicago, B. & Q. R. Co. v. Hildebrand*, 42 Neb. 33, 60 N.W. 335 (1894).

[21] *Jacobs Engr. Group v. ConAgra Foods, supra* note 15; *Schuster v. Baumfalk*, 229 Neb. 785, 429 N.W.2d 339 (1988); *Chmelka v. Continental Western Ins. Co.*, 218 Neb. 186, 352 N.W.2d 613 (1984); *Mustion v. Ealy*, 201 Neb. 139, 266 N.W.2d 730 (1978); *Davis v. Dennert, supra* note 7; *Markussen v. Mengedoht*, 132 Neb. 472, 272 N.W. 241 (1937); *Chicago, B. & Q. R. Co. v. Hildebrand, supra* note 20. See, *Thomas v. Peterson*, 307 Neb. 89, 98, 948 N.W.2d 698, 705 (2020) ("unless an exception applies, only a preponderance of evidence is required in civil cases"); *In re Interest of Jeremy U. et al.*, 304 Neb. 734, 743, 936 N.W.2d 733, 742 (2020) ("'preponderance of the evidence'" is equivalent to the "greater weight of the evidence," which means evidence sufficient to make a claim more likely true than not true).

[22] *Ag Valley Co-op v. Servinsky Engr.*, 311 Neb. 665, 974 N.W.2d 324 (2022); *Kaiser v. Union Pacific RR. Co.*, 303 Neb. 193, 927 N.W.2d 808 (2019); *Pitts v. Genie Indus.*, 302 Neb. 88, 921 N.W.2d 597 (2019); *Richards v. Meeske*, 268 Neb. 901, 689 N.W.2d 337 (2004); *Mefferd v. Sieler & Co.*, 267 Neb. 532, 676 N.W.2d 22 (2004).

speculation, or choice of quantitative possibilities are, of course, not proof.[23] This principle is embodied in our rules of evidence for lay witnesses and expert witnesses.[24]

> The word "speculation" is defined as "[t]he practice or an instance of theorizing about matters over which there is no certain knowledge." To "speculate" is to form opinions about something without having the necessary information or facts or to make guesses. Objecting to "speculation" is another way of objecting to either lack of personal knowledge or expressing an opinion.[25]

Hence, a verdict unsupported by any competent evidence and based solely upon speculation and conjecture cannot stand.[26] While negligence is an inference to be drawn by the jury from facts established, facts warranting such an inference must be established by evidence, and a jury must not be left to conjecture—to infer not only negligence, but the existence of facts that would constitute negligence.[27] Presumptions and inferences may be drawn only from facts established and may not rest on presumption or inference.[28]

[15,16] It is true that merely establishing that an accident happened does not prove negligence[29] or raise a presumption of negligence.[30] But this is because misfortunes do occur as

---

[23] *Mustion v. Ealy, supra* note 21.

[24] See Neb. Rev. Stat. §§ 27-701 to 27-705 (Reissue 2016).

[25] *Brown v. Morello*, 308 Neb. 968, 975, 957 N.W.2d 884, 890 (2021).

[26] *Fischer v. Wilhelm*, 140 Neb. 448, 300 N.W. 350 (1941); *Securities Investment Corporation v. Krejci*, 132 Neb. 146, 271 N.W. 287 (1937).

[27] *Omaha & R. V. R. Co. v. Clarke*, 39 Neb. 65, 57 N.W. 545 (1894) (citing *Kilpatrick v. Richardson*, 37 Neb. 731, 56 N.W. 481 (1893)).

[28] *Barkalow Bros. Co. v. Floor-Brite, Inc.*, 188 Neb. 568, 198 N.W.2d 329 (1972); *R & S Corp. v. Barnes*, 182 Neb. 431, 155 N.W.2d 379 (1967); *Lebs v. Mutual Benefit Health & Accident Ass'n*, 124 Neb. 491, 247 N.W. 19 (1933).

[29] *Robinson v. Dustrol, Inc.*, 281 Neb. 45, 793 N.W.2d 338 (2011).

[30] *Herrera v. Fleming Cos., supra* note 6.

a result of inevitable accident, which does not afford a basis for a recovery in the absence of any negligence on the part of a defendant.[31] Where a plaintiff has shown that competent evidence exists to support the essential elements of a cause of action, and competent evidence to the contrary has been produced, or different conclusions or inferences may reasonably be drawn from the evidence, it is then exclusively the province of the fact finder to determine the weight of the evidence and judge the credibility of witnesses.[32]

[17,18] It has long been the settled rule in this state that where different minds may draw different inferences from the same facts, whether such facts establish negligence is a proper question for the jury, not for the court; but where it is impossible to infer negligence from the established facts without reasoning irrationally, and contrary to common sense and the experience of an average person, it is not a question for the jury.[33] As then-Nebraska Supreme Court commissioner Nathan Roscoe Pound aptly stated, "The jury are to judge of the issues of fact in their own way, that is by the ordinary, natural tests of common sense and reason, and not by an artificial standards growing out of judicial experience."[34] The

---

[31] *Pendleton Woolen Mills v. Vending Associates, Inc.*, 195 Neb. 46, 237 N.W.2d 99 (1975) (citing *Roos v. Consumers Public Power Dist.*, 171 Neb. 563, 106 N.W.2d 871 (1961)).

[32] See, *Martensen v. Rejda Bros.*, 283 Neb. 279, 808 N.W.2d 855 (2012); *Doe v. Zedek*, 255 Neb. 963, 587 N.W.2d 885 (1999); *Krul v. Harless*, 222 Neb. 313, 383 N.W.2d 744 (1986); *Beveridge v. Miller-Binder, Inc.*, 177 Neb. 734, 131 N.W.2d 155 (1964); *Nebraska Methodist Hospital v. McCloud*, 155 Neb. 500, 52 N.W.2d 325 (1952); *McCarter v. Cover*, 122 Neb. 691, 241 N.W. 525 (1932); *Advance-Rumely Thresher Co. v. Bartzat*, 114 Neb. 35, 206 N.W. 7 (1925); *Toncray v. Dodge County*, 33 Neb. 802, 51 N.W. 235 (1892); *Lea v. McLennan*, 7 Neb. 143 (1878).

[33] *Anderson v. Altschuler*, 125 Neb. 853, 252 N.W. 310 (1934) (citing *C., B. & Q. R. Co. v. Landauer*, 36 Neb. 642, 54 N.W. 976 (1893), and *Kelly v. Gagnon*, 121 Neb. 113, 236 N.W. 160 (1931)).

[34] *Stull v. Stull*, 1 Neb. (Unoff.) 380, 400, 96 N.W. 196, 203 (1901). (Pound, C., concurring in the result).

proper question is whether, when looking at the evidence, a jury using common sense and experience could reasonably arrive at a conclusion.[35]

## Proximate Cause on Summary Judgment

[19] The ultimate question presented by this appeal is whether the plaintiffs produced sufficient evidence to support their allegation of proximate cause to preclude summary judgment. In considering a motion for summary judgment, the evidence is to be viewed most favorably to the nonmovant, giving to that party the benefit of all inferences which may reasonably be drawn from the evidence.[36]

[20,21] The party moving for summary judgment has the burden to show that no genuine dispute of material fact exists and must produce sufficient evidence to demonstrate that the moving party is entitled to judgment as a matter of law if the evidence was uncontroverted at trial.[37] If the movant does so, the burden shifts to the party opposing the motion to produce evidence showing the existence of a genuine dispute of material fact that prevents judgment as a matter of law.[38] To be granted summary judgment for a nonsuit, a defendant must show that one of the required elements of a plaintiff's case cannot be established.[39] Failure of proof concerning an essential element of the nonmoving party's case renders all other facts immaterial.[40]

[22,23] To prevail in any negligence action, a plaintiff must show a legal duty owed by the defendant to the plaintiff, a

---

[35] See *Genetti v. Caterpillar, Inc.*, 261 Neb. 98, 621 N.W.2d 529 (2001).

[36] *Carpender v. Bendorf*, 246 Neb. 77, 516 N.W.2d 619 (1994).

[37] *Benard v. McDowall, LLC*, 298 Neb. 398, 904 N.W.2d 679 (2017).

[38] *Id.*

[39] *Caguioa v. Fellman*, 275 Neb. 455, 747 N.W.2d 623 (2008).

[40] *Freeman v. Hoffman-La Roche, Inc.*, 300 Neb. 47, 911 N.W.2d 591 (2018).

breach of such duty, causation, and resulting damages.[41] The sole subject of this appeal is the essential element of proximate cause as to the plaintiffs' claims. A proximate cause is a cause that produces a result in a natural and continuous sequence and without which the result would not have occurred.[42] We note that by producing evidence of a proximate cause of Block's fall unrelated to the defendants' alleged negligence, the defendants produced enough evidence to demonstrate that they would be entitled to a judgment as a matter of law if the evidence was uncontroverted at trial. The issue before us is whether the plaintiffs produced evidence that showed the existence of a genuine dispute as to proximate cause that prevented judgment as a matter of law.

On appeal, the plaintiffs argue they met the burden of showing a genuine factual dispute regarding whether the defendants' alleged negligence was a proximate cause of Block's fall. The plaintiffs contend they showed a reasonable inference could be drawn that Block came into contact with the balcony's steel railing, the railing gave way, and, as a result, Block fell to the concrete below. As the plaintiffs state in their brief on appeal: "If [Block] did not make some contact with the railing before he fell, how did the railing wind up on the ground next to him? It is really that simple."[43] The plaintiffs maintain that the district court's preoccupation with whether a witness saw Block make contact with the railing was arbitrary, and the lack of such direct evidence did not warrant granting the defendants' motion for summary judgment.

In response, the defendants argue that the district court correctly determined that there were no genuine disputes as to any material facts, because absent any eyewitness testimony, a jury would be forced to speculate as to the proximate cause

---

[41] *Porter v. Knife River, Inc.*, 310 Neb. 946, 970 N.W.2d 104 (2022).

[42] *Pitts v. Genie Indus., supra* note 22; *Radiology Servs. v. Hall*, 279 Neb. 553, 780 N.W.2d 17 (2010); *Davis v. Dennert, supra* note 7.

[43] Brief for appellants at 13.

of Block's fall. The defendants point to the deposition testimony of Harms and Sanchez, where they were provided multiple opportunities to clarify their observations and stated that they did not observe the precise moment Block fell off the balcony or the railing detach. The defendants contend that by failing to produce eyewitness testimony of Block's fall, the plaintiffs failed to produce evidence showing the existence of a genuine dispute of material fact that prevented judgment as a matter of law.

The defendants cite *Swoboda*[44] and assert that there are "a minimum of three plausible explanations" as to what "could have caused" Block's fall.[45] The defendants aver that it is "at least equally as plausible" that Block's fall was caused by (1) the railing's detachment, as the plaintiffs allege; (2) Block's loss of balance and failure to negotiate the small area of the balcony; or (3) Block's intoxication.[46] To that end, the defendants argue they showed that the essential element of proximate cause could not be established, rendering all other facts immaterial. We disagree.

The plaintiffs have shown competent evidence exists to establish that the defendants' alleged negligence was a proximate cause of Block's fall and resulting death. On summary judgment, the plaintiffs produced evidence that the balcony's steel railing was loose before Block's fall, that it detached at the time of his fall, and that the railing and lag bolts were near Block's body on the concrete below after his fall. We also note that the testimony addresses Block's trajectory, which could support an inference as to the manner he came into contact with the railing. A jury using common sense and experience could reasonably conclude that the defendants' failure to repair or replace the balcony railing, or warn that it was loose, was a proximate cause of Block's death. To

---

[44] *Swoboda v. Mercer Mgmt. Co., supra* note 1.

[45] Brief for appellees at 15.

[46] *Id.*

hold otherwise would destroy the value of circumstantial evidence entirely.[47]

There is no merit to the defendants' argument that multiple plausible explanations of how the fall occurred entitle them to summary judgment. This case is readily distinguishable from *Swoboda*.[48] In *Swoboda*, the plaintiff did not produce *any* evidence that she tripped in the manner alleged in her complaint. We held that while the plaintiff was not required to eliminate all alternate theories regarding how the accident may have happened, she was required to produce evidence that would allow a jury to logically infer that the accident happened in the manner alleged. Due to the absence of evidence of how the plaintiff tripped, an inference was not deducible.

Conversely, in this case, the plaintiffs have shown that a jury could find that the accident happened in the manner alleged in their operative complaint. A rational jury could even find that Block was intoxicated and lost his balance, leading him to come into contact with the railing, which then detached and fell with him instead of preventing his fall. Such a situation presents a question of comparative negligence. Where reasonable minds may draw different conclusions and inferences regarding the negligence of the parties, the apportionment of fault must be submitted to a jury.[49]

[24] On summary judgment, the nonmovant is entitled to the benefit of all inferences which may reasonably be drawn from the evidence. All the law requires is that the facts and circumstances proved, together with the inferences that may be logically drawn from them, indicate that the negligence complained of was more likely true than not true. Where different minds may draw different inferences from the same facts, whether such facts establish negligence is a proper question

---

[47] See *Western Travelers' Accident Ass'n v. Holbrook*, 65 Neb. 469, 91 N.W. 276 (1902).

[48] *Swoboda v. Mercer Mgmt. Co., supra* note 1.

[49] *Gonzalez v. Union Pacific RR. Co.*, 292 Neb. 281, 872 N.W.2d 579 (2015).

for the jury, not for the court. It is the role of the jury to judge the issues of fact in its own way, that is, by the ordinary, natural tests of common sense and reason. Summary judgment is not appropriate when more than one inference is deducible from the evidence produced. The plaintiffs have shown that a genuine dispute exists as to proximate cause that prevented judgment as a matter of law.

## CONCLUSION

Because the plaintiffs met their burden by producing evidence that showed the existence of a genuine dispute of material fact as to whether the defendants' alleged negligence was a proximate cause of Block's fall and resulting death, the district court erred in granting the defendants' motion for summary judgment. Hence, we reverse, and remand this matter for further proceedings.

Reversed and remanded for
further proceedings.